RICHARD TALLON, JOHN J. DEVITT ET AL., PLAINTIFFS IN ERROR, v. THE MAYOR AND COMMON COUNCIL OF THE CITY OF HOBOKEN AND THE HOBOKEN RAIL-ROAD WAREHOUSE AND STEAMSHIP CONNECTING COMPANY, DEFENDANTS IN ERROR.

1. *Certiorari* will not lie in favor of private prosecutors to review a municipal ordinance, unless it appears that such prosecutors have a personal property interest which will be specially affected in an injurious manner by the enforcement of such ordinance.

2. A corporation organized under the General Railroad law has not, ordinarily, the right to occupy highways of this state longitudinally with its railway.

3. The power conferred upon the city of Hoboken by its charter to regulate its streets does not authorize it to permit the construction and operation of a railroad upon its streets by a corporation organized under the General Railroad law.

4. The eleventh section of the charter of the city of Hoboken authorizes it to grant permission by ordinance to any person or corporation to lay railroad tracks, and run rail cars thereon, in or over any of the streets within said city, subject to certain conditions therein specified. *Held*, that this provision is limited to the construction and operation of street railways and does not authorize the city to permit the construction and operation in its streets of a railroad by a corporation organized under the General Railroad law.

5. A person who dedicates land to public use as a highway may, in such dedication, reserve to himself and his assigns the right to construct and operate a railroad therein.   When such reservation is made the public takes the highway *cum onere*.

6. The owner of an easement in the land of another is not bound to use it in the particular manner prescribed by the instrument which creates it.   He may use it in a different manner if he so desires, provided he does not, in doing so, increase the servitude nor change it, to the injury of the owner of the servient tenement.

On error to the Supreme Court. For opinion of the Supreme Court, see 30 *Vroom* 383.

For the plaintiffs in error, *Abel I. Smith, Leon Abbett* and *William H. Corbin.*

For the defendants in error, *James B. Vredenburgh, Edwin A. S. Lewis* and *James F. Minturn.*

The opinion of the court was delivered by

GUMMERE, J. The city of Hoboken, by an ordinance approved October 30th, 1895, gave consent and authority to the Hoboken Railroad Warehouse and Steamship Connecting Company " to construct and operate a railway propelled by electricity on certain streets and avenues in the city of Hoboken, and also to erect poles on certain of said streets and avenues for the purpose of stringing wires thereon necessary to operate its railway with electric power."

The plaintiffs in error sued out a *certiorari* from the Supreme Court for the purpose of contesting the validity of that ordinance, and that court having sustained the ordinance and dismissed the *certiorari*, its decision is brought into this court for review.

So far as the plaintiffs in error, other than John J. Devitt, are concerned, we do not think that they are entitled to challenge the validity of this ordinance by *certiorari*. It has been frequently held, both in the Supreme Court and in this court, that *certiorari* will not lie in favor of private prosecutors to review the action of public officials unless such prosecutors have a personal or property interest which will be specially and immediately affected by the action complained of; and unless the person who applies for the writ shows that he will suffer a special injury beyond that which shall affect him in common with the remainder of the public, the writ will be denied him. *Kean* v. *Bronson*, 6 *Vroom* 468 ; *Morgan* v. *Orange*, 21 *Id.* 389 ; *Jersey City* v. *Traphagen*, 24 *Id.* 434 ; *Montgomery* v. *Trenton*, 7 *Id.* 79.

There is nothing in the evidence taken to support the writ from which it can be concluded that any of the prosecutors, excepting Devitt, had any personal or property interest which the ordinance complained of would immediately affect, or that they would suffer a special injury by it beyond the remainder of the public. The writ was, therefore, properly dismissed as to them.

Devitt, however, stands in a different position. By the provisions of the ordinance one of the trolley poles which the Hoboken, &c., Connecting Company is authorized to erect in the streets of Hoboken, is to be placed upon his property within the lines of one of those streets. He therefore has a property right which is, apparently, specially affected by this ordinance, and consequently is entitled to contest its validity by *certiorari;* and, if it shall be found that the ordinance was one beyond the power of the city of Hoboken to pass, he is entitled to have it declared invalid so far as it injuriously affects him. *Green* v. *Trenton,* 25 *Vroom* 92.

The Hoboken, &c., Connecting Company is not a street railway company. It was incorporated under the General Railroad law, and the legislature has not conferred upon companies incorporated under that act the right to make use of the public highways of the state, longitudinally, for the purposes of their roads. *Thompson* v. *Ocean City Railroad Co., ante p.* 74.

Nor, as I read the charter of the city of Hoboken, has the legislature conferred upon that municipality the power to authorize the diversion of its streets from the ordinary uses thereof to the uses of these railroad companies. It is insisted before us that the fortieth section of the city charter, which vests in the common council the regulation of its streets and public squares, authorizes it to permit such a diversion of the use of its streets. But this is not so. The grant of authority by the city to one of these companies to use its streets longitudinally is not a regulating of such streets, but is a conversion of them into a means of transportation with which the existence of a street has no natural or necessary connection

within the purview of the charter. *Montgomery* v. *Trenton, supra; Davis* v. *Mayor of New York,* 14 *N. Y.* 506.

It is further insisted, on behalf of the defendants in error, that the necessary power is conferred upon the city by the eleventh section of its charter, as amended by the supplement of 1861 (*Pamph. L., p.* 526), which reads as follows: "It shall be lawful for the council, by general ordinance, to grant permission to any person or persons or corporation to lay railroad tracks, and run rail cars thereon, in or over any street or highway within said city, under such licenses, conditions and restrictions as the said council may think proper, and to alter, change or revoke the same at pleasure; provided, that no such granting or permission shall be made or given until a majority of the property-owners along the line of such street or highway shall have first given their consent in writing for the railway tracks to be laid."

I do not think that this legislative provision has the effect claimed for it. In my opinion it refers solely to the construction of such railroads as will not impose an additional servitude upon the land in the highway, inconsistent with the purposes for which it was originally appropriated to the public—in other words, to street railroads. This was the view taken by Chancellor Runyon, in the case of *Chamberlain* v. *Cordage Company,* 14 *Stew. Eq.* 43, of a similar provision in the charter of the city of Elizabeth.

If we should hold otherwise, then the city of Hoboken, by virtue of this provision of its charter, has the power to divest the public of the use not only of the streets mentioned in the ordinance under review, but also of the use of every other street within its boundaries, and to devote them exclusively to railroad uses; for the provision authorizes it to grant permission to lay railroad *tracks,* and run cars thereon, in or over "*any* street or highway within said city."

To justify the conclusion that the legislature intended to grant to a municipality power to deprive the public, either wholly or partially, of its accustomed use of the city streets, and to appropriate them to the private uses of a railroad cor-

poration, such intention should appear so plainly as to be beyond doubt. The fact that it does not so appear should be decisive that the power does not exist.

The legislature not having granted to railroad companies, incorporated under the General Railroad law, the right to construct and operate their railroads longitudinally on the public highways of the state, and not having conferred upon the city of Hoboken power to authorize the construction and operation of railroads within its streets by such corporations, it follows that the ordinance under review, so far as it attempts to authorize the Hoboken, &c., Connecting Company to do so, is *ultra vires* and void.

But it is urged on behalf of the defendants in error, that even if the ordinance in question should be deemed to be invalid, the *certiorari* should be dismissed for the reason that no personal or property interest of the prosecutor is injuriously affected by it.

This contention rests upon the following facts: The property of the prosecutor, which he claims is affected by this ordinance, abuts on Hudson street and extends to the middle line thereof. This street was laid out, opened and dedicated to the public use by the Hoboken Land and Improvement Company, Martha B. Stevens and Mary P. Lewis, who were, at the time of its dedication, the owners of the soil therein and of the lots abutting thereon. The dedication was in the following words: " Said street is dedicated as a public highway for passage over the same by ordinary vehicles and foot passengers only, subject to the right of the said company, Martha B. Stevens and Mary P. Lewis to lay tracks for horse cars and steam cars and elevated railways, to erect telegraph poles, electric light poles and the right to operate and use the same, and also subject to the right to lay, maintain and repair gas, sewer and water-pipes therein, all of which rights are expressly reserved unto the Hoboken Land and Improvement Company, its successors and assigns, Martha B. Stevens and Mary P. Lewis, their heirs and assigns forever, as fully and entirely as if no dedication of said lands to any public use whatever had ever been made."

The prosecutor purchased his lot from Martha B. Stevens, one of the dedicators.

Not only was the right to lay tracks for horse cars and steam cars, &c., and to operate and use the same, reserved to the dedicators and their assigns by the terms of the dedication, but, by the agreement for conveyance made by Martha B. Stevens to the prosecutor (the agreement has not yet been executed by the delivery of a deed, although the prosecutor has entered into possession), the same right was specifically reserved. Subsequent to the making of that agreement, the Hoboken Land and Improvement Company, Martha B. Stevens and Mary P. Lewis, granted and assigned to the Hoboken, &c., Connecting Company the right to lay and maintain railroad tracks and to erect poles and string wires thereon in Hudson street, and also the right to use and operate the same, which they had reserved to themselves and their assigns in the dedication of that street, and which Mrs. Stevens had reserved in the agreement for a conveyance made between herself and the prosecutor.

That a person who dedicates land to public use as a highway may, in such dedication, reserve to himself and his assigns the right to construct and operate a railroad therein cannot be denied. It has been so decided both in the Supreme Court and in this court. *Ayres* v. *Pennsylvania Railroad Co.*, 19 *Vroom* 44; *S. C.*, 23 *Id.* 405. And when such reservation is made, the public takes the highway *cum onere.*

But even if the law was otherwise and the reservation in the dedication was nugatory so far as it affects the public interests in the street, still the reservation contained in the agreement for sale to Devitt was unquestionably valid, and, so far as the private rights of Devitt in the street are concerned, authorizes the construction and operation of a railroad therein either by Mrs. Stevens or her assigns.

It is clear, therefore, that the ordinance complained of, so far as it authorizes the laying of railroad tracks upon Hudson street, works no injury to the prosecutor, for that right exists

in the Hoboken, &c., Connecting Company independent of the ordinance.

Nor do I think that the prosecutor is injuriously affected in his property rights by that portion of the ordinance which authorizes the connecting company to operate its railroad by electric power, notwithstanding the fact that the right reserved in the dedication, and in the agreement for a conveyance to him, is the operation of the road by horse or steam power. It is settled law that the owner of an easement in the land of another is not bound to use it in the particular manner prescribed by the instrument which creates it. He may use it in a different manner if he so desires, provided he does not, in doing so, increase the servitude nor change it, to the injury of the owner of the servient tenement. *Johnston* v. *Hyde,* 6 *Stew. Eq.* 632, 641.

The ordinance also authorizes the erection of a trolley pole upon the property of the prosecutor, within the lines of the street, and the stringing of wires thereon for the purpose of supplying electric power to the connecting company's cars. In this respect, it seems to me, the ordinance injuriously affects the property rights of the prosecutor. It is true that one of the rights reserved in the dedication of the street, and in the agreement to convey, was the right " to erect telegraph poles and electric light poles, and to operate and use the same," and it is suggested that this reserved right would justify the connecting company in erecting trolley poles and stringing wires thereon for the purpose of carrying power to its cars. But such a use is not only different from that which was reserved, but the character and intensity of the electric current carried, as well as its greater continuity, when used for the purpose of affording power to the company's cars, would increase the servitude upon the prosecutor's property, to a slight extent at least, and therefore is not warranted by the reservation.

The conclusion which I have reached is that the prosecutor is entitled to have the ordinance set aside, so far as it authorizes the erection of a trolley pole upon his lands in Hudson

street and the stringing of wires thereon, but that he is not entitled to contest the legality of the rest of the ordinance or to have it set aside, as he has no personal or property interest which is specially affected by it.

*For affirmance*—None.

*For reversal*—DEPUE, DIXON, GARRISON, GUMMERE, VAN SYCKEL, BOGERT, DAYTON, HENDRICKSON, NIXON.   9.