| 62 | 561 |
|----|-----|
| 65 | 610 |

THE STATE, THE HOBOKEN RAILROAD, WAREHOUSE AND STEAMSHIP CONNECTING COMPANY, PROSECUTOR, v. THE STATE BOARD OF ASSESSORS AND WILLIAM S. HANCOCK, COMPTROLLER OF THE STATE OF NEW JERSEY.

Argued June 8, 1898—Decided November 7, 1898.

The prosecutor was incorporated as a railroad company, and the map showing the proposed route of its railroad filed in the office of the secretary of state indicated the route of the railroad through public streets, the title to the fee in which being in Mrs. S. Authority to use the streets for that purpose was granted by a city ordinance. The acquisition of title by the railroad company and the construction of its railroad were enjoined in *certiorari* proceedings and also by injunction of the Court of Chancery. *Held*, that the company was liable to

taxation upon the property of the company, consisting of embankments, tracks, &c., which were works constructed for railroad purposes, but that under the peculiar situation in which the affairs of the company were placed it was not, while its proceedings were stayed, taxable on the lands as lands, the title of which was in another.

On *certiorari* in matter of taxation.

Before Justices DEPUE, VAN SYCKEL and GARRISON.

For the prosecutor, *Edwin A. S. Lewis.*

*Contra, Samuel H. Grey,* attorney-general.

The opinion of the court was delivered by

DEPUE, J.   The prosecutor was incorporated, September, 1895, as a railroad corporation of this state, and a map showing the proposed route of its railroad was filed in the office of the secretary of state at the time of its incorporation. The route of the railroad company, as located, was over property the title of which was in Mrs. Stevens, and the location of the route was within certain streets in the city of Hoboken. The authority to use the streets for that purpose was granted by a city ordinance.   The road, as located, was a single-track road, one and nine hundred and twenty-three thousandths miles in the city of Hoboken and one hundred and one thousandths mile in the township of Weehawken.   The company began the construction of its railroad early in 1897.   It did not get the title to the land covered by its road until January 1st, 1898, and the road was not put in operation until that year.   The tax in question was laid for the year 1897.

The tax as originally laid by the state board of assessors was as follows:

Assessed valuation of main stem........................ $87,500
Assessed valuation of tangible personal property
 necessary for and used in state commerce......... 100

$87,600

On which a tax was levied for state uses of $438.

In the above valuation of lands in the main stem were included graduation, $5,727; bridges and culverts, $500; track, $21,486.85; making $27,713.85.

On the appeal the total assessment was reduced from $87,600 to $67,400, the assessed valuation of the real estate being reduced to $67,300, and the tax for state uses thereon being $337.

The title to the land on which this graduation and work of construction were done was in Mrs. Stevens, and she was assessed for the same as her property by the city.

It is indisputable that if the lands in question were used by the prosecutor for railroad purposes they would be taxable for state taxes to the company under the Railroad Taxation act, whether the title was actually vested in the company or not. A contrary assumption would open the way for the evasion of taxation. Nor do I think it at all questionable that if the company has the title to its roadbed and has constructed its road thereon, taxes thereon could be laid by the state board of assessors for state purposes, although the lands were not actually in use for the transaction of the company's business. In *United Railroad and Canal Co.* v. *Jersey City,* 26 *Vroom* 129, 131, Chancellor McGill, delivering the opinion in the Court of Errors, said: "We think that where an authorized right of way has been acquired, over which a railroad has been constructed and is in good faith operated, which right of way is not devoted to another purpose, it is used for railroad purposes within the meaning of the statute considered, although it may not for the time being be wholly occupied by tracks or other railroad appliances. That part of it which awaits railroad occupation upon the demand of necessity is in use, like the curtilage to a dwelling-house or the sides of a country highway." The principle so announced by the Chancellor as the basis of decision would apply to land under a contract to purchase from the owner on which the company had laid out its money in constructing its track, although the same was not in actual use for railroad purposes.

The complications in this case arise out of the peculiar situation in which the affairs of the company were placed. The use of this property for railroad construction had been bargained for with Mrs. Stevens by parol. An ordinance had been passed by the city to authorize the use of the public streets in which the company's railroad was to be laid. In October, 1895, a writ of *certiorari* was sued out of the Supreme Court by Richard Tallon and others, as prosecutors, against the company and the city to set aside the ordinance which granted the company the right to occupy these streets with its railroad, and an order was made by this court enjoining the company from constructing or operating its railroad. This suit was not finally determined in the Court of Errors and Appeals until October, 1897. *Tallon* v. *Hoboken*, 31 *Vroom* 212. A similar suit was commenced by the Ocean Steamship Company in March, 1897, which was not settled until October in that year. In September, 1897, John J. De Witt instituted a suit in Chancery to enjoin and restrain the company from constructing or operating its railroad, and that suit was not disposed of until the month of October, 1897. By force of these restraining orders the work of the company, and incidentally the acquisition of title by the company, was restrained until the latter part of 1897, after the time when the tax in question was assessable and assessed.

The railroad structure being laid on this land under an arrangement with Mrs. Stevens, the property therein became vested in the company. It does not appear that in the taxable valuation of these lands, in assessing the tax against Mrs. Stevens, the value of the construction of the roadbed and the structures laid on it were included. In any proceeding that the company might take to acquire a formal title, the outlay for these improvements would be treated as belonging to the company, although the naked fee in the lands was the property of Mrs. Stevens.

It would certainly be unjust, under the circumstances, to tax the railroad for the value of the lands as lands when the title was in another, but we think that, under the peculiar

classification in the Railroad Taxation law of lands, track, &c., to be separately valued, taxation such as that now in question may lawfully be laid upon the property of the company consisting of embankments, track, &c., works constructed for use for railroad purposes.

A reference may be made to a commissioner to adjust this taxation in conformity with the views here expressed, or if counsel are satisfied with the valuations which appear in the case, the assessment may be set aside as to the taxation on the lands and affirmed in other respects. The figures above given of the valuation of graduation, bridges, culverts and tracks, at $27,713.85, will in this event be the amount for which the assessment should be affirmed.