IN THE MATTER OF THE APPLICATION OF THE ERIE RAILROAD COMPANY FOR A SUMMARY DETERMINATION AS TO CERTAIN LANDS IN JERSEY CITY WHICH HAVE BEEN ASSESSED BY THE LOCAL AUTHORITIES OF THE TAXING DISTRICT OF JERSEY CITY, AND ALSO ASSESSED BY THE STATE BOARD OF ASSESSORS AS PROPERTY USED FOR RAILROAD PURPOSES.

Submitted December 11, 1900—Decided March 4, 1901.

1. Property in the possession of a railroad company as of right, if suitable and proper to the purposes of its franchise and used by it for such purposes, is, irrespective of its ownership by the railroad company, property upon which it may be taxed under "An act for the taxation of railroad and canal property." *Pamph. L.* 1888, *p.* 269.

2. Land in Jersey City, owned by the Long Dock Company, was demised to the Erie Railroad Company who afterwards joined with the Long Dock Company in a demise of the same to one Hoyt, who, under a contract contained in the same instrument, built upon the demised premises a pier and a grain elevator which, during his lifetime, he and, since his death, the Erie Elevator Company, his successor, operated under the terms of said contract. *Held*, that the pier and elevator were property not used for railroad purposes and that they were taxable by the authorities of Jersey City under the General Tax law.

On error to the Supreme Court. For opinion of the Supreme Court, see 35 *Vroom* 123.

For the Erie Railroad Company, *James B. Vredenburgh.*

For the state, *Samuel H. Grey,* attorney-general.

For Jersey City, *John W. Queen* and *Allan L. McDermott.*

The opinion of the court was delivered by

GARRISON, J. This controversy was instituted before the Supreme Court in order to test the right of Jersey City to tax certain property, consisting of a pier and grain elevator, which the state board of assessors had assessed to the Erie Railroad Company as property used for railroad purposes, and the taxing authorities of Jersey City had taxed as other than railroad property, under the General Tax law.

The title to the land upon which these improvements had been made was in the Long Dock Company, a corporation of this state. The structures themselves were owned either by the Long Dock Company, upon whose land they stood, or by the Erie Elevator Company, who had built them; they were not owned by the Erie Railroad Company, to whom they were assessed by the state board of assessors. This circumstance effectually disposed, in the opinion of the court below, of the question submitted to it, upon the ground that the statute from which the state board of assessors derives its powers, to wit, "An act for the taxation of railroad and canal property" (*Pamph. L.* 1888, *p.* 269), does not authorize the taxation of any property other than that which is owned by railroad or canal companies. *In matter of taxation of the Erie Railroad Co.,* 35 *Vroom* 123.

The opinion of the learned Chief Justice is entirely free from ambiguity upon the point that "railroad property," in the title of the act above cited and in its enacting clauses, means property owned by railroad companies, and hence does not authorize the taxation of any property that is not so owned. The language of the opinion upon this point is this

(*sparsim*) : "The title of these acts is significant. It expresses the legislative purpose to tax the property of railroad and canal companies. The property on which taxation is to be laid by virtue of this legislation is the property of railroads and canals. The scheme of taxation established by this legislation applies exclusively to the property of railroad and canal companies. It has no relevancy to taxation on property owned by others than railroad or canal companies, although such property may be used in connection with and for the convenience of such companies in the transaction of their business."

The far-reaching effect of this construction upon the revenues of the state may, in part, be gauged by a consideration of the extent to which the instrumentalities of these carrying companies are located upon demised land or upon mere rights of way, or else consist of leased property, the ownership of which is in others than the railroad company, often in owners whose residence is outside of this state. If all the property in this state that is used for railroad purposes as of right, but is not owned by railroad companies, is to be eliminated from the scheme of state taxation, and is to be subjected to separate assessment in whatever locality it is found, or wherever its owner resides, if within this state, the importance of this decision to all parties concerned can scarcely be overestimated.

Careful consideration has satisfied me that the construction that the Supreme Court has placed upon this act is not in harmony with the decisions of this court, and is not in accord with the previously enunciated views of the court that pronounced it. The most recent of these expressions is in the *Hoboken Railroad Tax Case,* 33 *Vroom* 561, decided in 1898, and is in these words: "The title to the land on which this graduation and work of construction were done was in Mrs. Stevens, and she was assessed for the same as her property by the city. It is indisputable that *if the lands in question were used by the prosecutor for railroad purposes* they would be taxable for state taxes to the company under the Railroad Taxation act, *whether the title was actually vested in the company or not.*"

This language expresses the generally accepted view of this system of taxation, held alike by those who administer it and by the wide interests especially affected by it. It is the correct view. The word "property" in this enactment is not, in this view, limited to titles held in fee-simple, neither does it necessarily import ownership in any form; on the contrary, it has its ordinary legal meaning, viz., "a right or interest which a man has in lands and chattels to the exclusion of others." 2 *Bouv. Dict.* 387.

The right or interest of a railroad that is deemed to be property within the meaning of this act may be an absolute fee or any less interest down to simple possession as of right, and to the extent of such interest and of the railroad use made of it such company will be taxable under the provisions of this act. That the limited meaning placed upon the term "railroad property" by the court below should give away to this more liberal one is in harmony with an earlier decision of this court of a somewhat similar nature. In *New Jersey Railroad Co.* v. *Hancock,* 6 *Vroom* 537, the question whether a railroad was taxable upon certain real property turned upon whether the property was "necessary" to the corporation; if so, it was exempt by its charter; if not, it was properly taxed. It was an admitted fact that the use of this property, while convenient and profitable for the railroad, was not essential to it. In the Supreme Court it was held that "necessary property" meant indispensable property, or to that effect. *New Jersey Railroad Co.* v. *Hancock,* 4 *Id.* 315. In this court, in an opinion prepared by Chief Justice Beasley, it was held that "the property necessary to a railroad company" was a term comprising a right to use all the means suitable and proper to accomplish the end which the legislature had in view at the time of the enactment of its charter. It is upon this decision that the state relies for its right to assess structures, such as piers, wharves, grain elevators, &c., under the Railroad Taxation act. *Pennsylvania Railroad Co.* v. *Jersey City,* 20 *Id.* 540.

If the words "railroad property" in the Taxing act of 1888 be construed in this spirit, and yet within their precise mean-

ing, that enactment will be that property, real or personal, in the possession of a railroad company as of right, if suitable and proper to the purposes of its franchise and employed by it for such purposes, is, irrespective of its ownership by the company, to be taxed by the state board of assessors.

That this is the construction hitherto placed upon this act in this court and as a most persuasive argument against the construction made in the court below, attention is directed in the brief of the attorney-general to the significance of the fact that in the memorable struggle that marked the inauguration of this species of taxation the construction of the word "property" now contended for, which would have constituted an argument of the greatest force against the constitutionality of the law, was not even suggested by those who so strenuously maintained that position.

Issue upon that point, it will be recalled, was joined upon the legitimacy of the classification of railroad and canal property for the purposes of general legislation. In the Supreme Court Chief Justice Beasley, in an opinion that began and ended with asseverations of his sense of the gravity of the question he was deciding, held that the property *used* by railroad and canal companies did not constitute a class upon which a tax for state purposes could constitutionally be imposed. *Central Railroad Co.* v. *State Board of Assessors,* 19 *Vroom* 1.

In this court, in opinions filed by the Chancellor and by every Justice of the Supreme Court who heard the cause, it was both assumed and stated that the property that had been set apart for taxation by this statute was such as was *used* by railroads and canals for their corporate purposes, and that under this act (I cite from the opinion of Mr. Justice Dixon) "the property to be assessed is all property *used* for railroad purposes." *Central Railroad Co.* v. *State Board of Assessors,* 19 *Vroom* 309. To the same effect were all the opinions. Mr. Justice Depue, who dissented from the rest of the court upon another point, stated categorically that "the classification adopted in this act is upon the *use* to which the property is devoted." *Central Railroad Co.* v. *State Board of Assessors, Id.* 353.

The assumption that the legislature had in this act further subdivided property used for railroad and canal purposes, so that its taxing scheme fell not upon all of the property so used, but only upon so much of it as was owned by these corporations, would have destroyed the force of every opinion that was read in the Appellate Court in support of its decision and have placed in the hands of the chief opponent of the legality of the measure a weapon that he would have felt it his duty to employ. The subsequent references of the Chief Justice (Beasley) to this decision show the sense in which he understood that this court had construed the critical word "property" in this act. "The fact that these properties were put to the same *use* was the basis laid by the Court of Errors of its classification," is one of these references; another epigrammatically characterizes the statute as construed by this court as "a law separating the *possessions* of these two descriptions of corporations from all other property." *Central Railroad Co.* v. *State Board of Assessors, 20 Vroom* 1.

It is entirely clear that at that time it was the accepted understanding that the word "property" in this act had been decided by this court to mean "things in possession and use" and "not things owned."

With the establishment of this proposition of law, the decision of the matter now in controversy becomes wholly a question of fact upon the material furnished by the court below.

The opinion of that court does not find, categorically, that the petitioner, the Erie Railroad Company, had any possession of or interest in the property taxed, but rests upon the assumption that the property was in use for railroad purposes. An examination, however, of the comprehensive opinion of Chief Justice Depue (*In the matter of Taxation of the Erie Railroad Co., 35 Vroom* 123) shows that certain matters of fact were ascertained in the Supreme Court, the legal effect of which is to deny that the property in question was used for railroad purposes within the meaning of the statute. If this be so, then, no matter by whom it was owned, it was subject to taxation by Jersey City alone.

The statute upon this point is that "all the property of any railroad or canal company not used for railroad or canal purposes shall be assessed and taxed by the same assessors and in the same manner and at the same rate as the taxable property of other owners in the same taxing district." *Gen. Stat., p.* 3324, § 212.

For a detailed description of the subject-matter of this controversy the opinion already alluded to should be consulted.

For present purposes it is sufficient to state that the property is land upon which is erected a pier and grain elevator. The land is owned by the Long Dock Company, who leased it to the Erie Railroad Company, who sublet it to one Hoyt, under a tripartite agreement between the Erie Railroad Company, the Long Dock Company and the said Hoyt, in pursuance of which Hoyt erected a pier and elevator, and in further pursuance of which the Erie Elevator Company, who succeeded to Hoyt's interests, has received for storage or transhipment the grain delivered by the Erie Railroad Company at the elevator, and in other respects has subjected the property to the purposes set forth in the said contract. The most careful analysis of this contract and of the facts found by the Supreme Court and of the nature of the commerce carried on by and between the parties to this contract fail to disclose a single circumstance upon which to base a verdict that the railroad company, apart from the terms of its contract with the owners of this property, used or claimed any right to use the property of either of them for any purpose, railroad or otherwise.

By the tripartite contract the use of the land was vested, by its owner, and by the Erie Railroad Company, its lessee, in the elevator company, for the purpose of enabling it to fulfill its contract with the railroad company. To this end the Erie Railroad Company and the Long Dock Company joined in a demise of the use to the elevator company. By this arrangement the railroad company exchanged its right to the possession of the property of the Long Dock Company for the right to recover damages against the elevator company for its failure to use the demised premises conformably to the terms of

its contract. Under these conditions the railroad company is no more using this property of the elevator company for railroad purposes than it is using for like purposes the property of any other person or corporation with whom it has a trade or transportation contract. The distinction is between the railroad company contracting with another for the use of his property by the railroad for its purpose, and its contracting with him that he shall use his property for the purposes of a certain contract between him and the railroad. The former is a case of property used by a railroad for railroad purposes; the latter is a case of the use of property by its owner for his own purposes.

Upon this point the opinion says: "The contract contains covenants between the railroad company and Hoyt with respect to the manner in which the business should be conducted between the parties. An inspection of these clauses will disclose the fact that they are agreements between Hoyt, carrying on a business for his own benefit, and the railroad company, contracting with him in respect of the business to be carried on by him for the railroad company.

"The contract provides that the railroad company shall deliver the grain at the elevator, and that Hoyt shall receive it at the elevator and unload it at his own expense. When cars loaded with grain reach the elevator and are opened and the grain is graded by the employes of the New York Produce Exchange it is delivered into the exclusive possession and control of the elevator company. The custody of the grain by the railroad company ends when it is delivered at the elevator to the elevator company. From that time until the grain is put into boats to be transported to the destination ordered by the consignee it remains in the exclusive custody of the elevator company. The contract expressly provides that the elevator company shall unload the grain at its own expense, and shall assume responsibility therefor during the possession of it from the time of the delivery to the elevator until delivery from the elevator to the lighters or vessels. The entire expense attending the handling and custody of the grain, including the wages of employes, and

the cost and expense of maintaining the elevator, its fixtures, machinery and appurtenances, and the docks and wharves in good working order, is assumed by the elevator company. The elevator and buildings are insured in the name and for the benefit of the elevator company. The custody of the subject-matter of this agreement is exclusively in the elevator company, and the work done therein is done by that company at its own expense, at a stipulated price to be paid to it by the railroad company. In the execution of its contract the elevator company is not operating a railroad or exercising any of the franchises of the railroad company. It is engaged simply in performing a contract for services rendered to the railroad company in executing its contract to carry."

In so far as these expressions are findings of fact by the Supreme Court, they are to be regarded as finalities upon this writ of error. *Delaware, Lackawanna and Western Railroad Co.* v. *Newark,* 34 *Vroom* 310. And in so far as they are constructions placed by the court below upon documentary proofs before it, they coincide in all respects with the conclusions reached by this court.

Regarding, therefore, the property that had been subjected to double assessment as property not used by the Erie Railroad Company for railroad purposes, it was taxable by the local authorities of Jersey City alone, under any view of the law and under any view of the other facts in the case.

The judgment, therefore, upon this point that was pronounced in the Supreme Court is the judgment that is pronounced in this court, viz., that the premises are liable to taxation by the mayor and aldermen of Jersey City, under the general law regulating taxation.

The judgment of the court below for the cancellation of all taxes assessed by the state board of assessors for the years 1897 and 1898 and the refunding to the Erie Railroad Company by the state of the amount paid by it for such taxes is likewise the judgment of this court.

The propriety of adjudicating in this proceeding with respect to the amount and *status* of the taxes for the years 1897 and 1898 allotted by the state board to the taxing dis-

trict of Jersey City has not been considered upon this writ of error. The assignment raises the question; the Supreme Court did not pass upon it, and did not ascertain, as a fact, that such allotments were made. If the state has paid these taxes to Jersey City they can be adjusted between the state, the city and the railroad upon the settlement of the latter's taxes to the city for those years.

The judgment of the Supreme Court in all other respects is unauthorized by law, and is not in accordance with the opinion filed in that court, and is reversed, without costs, and a judgment directed in accordance with this opinion.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, VAN SYCKEL, DIXON, GARRISON, COLLINS, FORT, BOGERT, KRUEGER, HENDRICKSON, ADAMS, VREDENBURGH, VOORHEES.     12.