In the Matter of Shrine of Our Lady of Martyrs of Auries-
ville, Appellant, *v.* Board of Assessors of the Town of Glen
et al., Respondents.

Third Department, November 21, 1972.

*Vincent E. Vicinanzo* and *Paul L. Wollman* for appellant.

*Edgar C. Leonhardt* (*Chandler S. Knight* of counsel), for
respondents.

Reynolds, J. This is an appeal from so much of the judgment
of the Supreme Court, Montgomery County, which dismissed
petitioner's application seeking to review tax assessments made
by respondents on various parcels of land owned by petitioner
in the Town of Glen, Montgomery County, New York, on the
ground that the parcels in question constitute tax-exempt realty
within the purview of then section 420 (now § 421) of the Real
Property Tax Law.

Appellant operates a religious shrine at the site upon which the Mohawk Indian Village of Ossernenon was situated and where it is believed that the North American martyrs and saints were tortured and killed. There is no question that most of the property and buildings located thereon are exempt under former section 420. However, Special Term upheld the tax assessments on a dining hall, cafeteria and parking lot used in connection therewith, a hotel known as the Shrine Inn, and a building used to house clergy and other guests, known as the Priests' Mansion, on the basis that appellant had failed to use the disputed parcels exclusively for the statutorily permitted purposes. The instant appeal is from the judgment entered on this decision.

In *Gospel Volunteers* v. *Village of Speculator* (33 A D 2d 407, 410, affd. 29 N Y 2d 622) this court held that: "In order to be entitled to exemption from taxation under section 420 of the Real Property Tax Law, respondent must pass a three-step test. 1. It must be organized exclusively for the purposes in section 420 of the Real Property Tax Law. 2. Its property must be used primarily in furtherance of these purposes. 3. No pecuniary profit * * * may inure to the benefit of any of its officers, members or employees, nor may it simply be used as a guise for profit-making operations." Appellant's certificate of incorporation sets forth its nonprofit purposes and thus it clearly meets the first criteria. However, not only must the certificate of incorporation admit of no construction which would permit corporate activity for purposes not specified within section 420, but also the property itself must be primarily used in furtherance of permitted purposes (*Crusade for Christ* v. *Town of New Lebanon*, 36 A D 2d 247, affd. without opn. 31 N Y 2d 765).

In determining whether the nonprofit organization's property is being used for permitted corporate purposes and, therefore, entitled to exemption from real property taxation, it must appear that the use in question is "necessary or fairly incidental" to the maintenance of the purposes for which the corporation was organized (*Greater N. Y. Corp. of Seventh-Day Adventists* v. *Town of Dover*, 29 A D 2d 861, app. dsmd. 23 N Y 2d 682). Residence and dining facilities have, of course, been held necessarily incidental and thus tax-exempt in many instances (*Matter of St. Luke's Hosp.* v. *Boyland*, 12 N Y 2d 135; *People ex rel. Clarkson Mem. Coll.* v. *Haggett*, 300 N. Y. 595; *Matter of Board of Foreign Missions* v. *Board of Assessors of City of Yonkers*, 244 N. Y. 42; *Silver Bay Assn. for Christian Conferences & Training* v. *Braisted*, 80 N. Y. S. 2d 548), and

appellant urges that its disputed facilities are necessary to enable its pilgrims and visitors to conveniently partake of its scheduled events and thus are also exempt. We concur in appellant's position. While there is some evidence of similar facilities available in the surrounding towns, the nearest of these is five miles away, and many of the public restaurants have business hours which would conflict with shrine activities, and many are limited in space. In addition many of the pilgrim visitors have no individual transportation but rather come by bus and there would be great difficulty in transporting these persons to and from the surrounding towns in time to participate in the religious and historical activities. It is, therefore, clear that the efficacy of the appellant's primary purpose would be seriously undermined without the benefits of these incidental material facilities.

Moreover, while it is certainly true that the appellant as a missionary organization makes every effort to attract visitors, there is no indication that it seeks to sound out members of the general public solely to utilize the disputed facilities. On the contrary, appellant accepts visitors on the reasonable assumption that they are intending to partake of its events or enjoy its religious and historical significance. And the remoteness of its location clearly reinforces this assumption. In fact, the record indicates that there is no mention of the disputed facilities in any of appellant's public advertising. The only publications in which the appellant itself calls attention to these material facilities are those pamphlets sent out to members of the organization and advertisements in certain Catholic newspapers. Clearly, these invitations are not directed to the general public but, rather, to a certain presumably interested class and only as incidental to the main objectives of the appellant.

The judgment should be modified, on the law and the facts, by reversing so much thereof as denied the exemption claimed for the disputed properties, and, as so modified, affirmed, with costs to appellant.

STALEY, JR., J. P. GREENBLOTT, SWEENEY and KANE, JJ., concur.

Judgment modified, on the law and the facts, by reversing so much thereof as denied the exemption claimed for the disputed properties, and, as so modified, affirmed, with costs to appellant.