138 N.J. Super. 524 (1976)
351 A.2d 756
CITY OF LONG BRANCH, PETITIONER-APPELLANT,
v.
MONMOUTH MEDICAL CENTER, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 15, 1975.
Decided January 27, 1976.
*525 Before Judges HALPERN, CRANE and MICHELS.
Mr. Robert L. Mauro argued the cause for appellant.
Mr. Francis J. Badach argued the cause for respondent (Messrs. Giordano and Halleran, attorneys; Mr. John R. Orlovsky on the brief).
*526 The opinion of the court was delivered by MICHELS, J.A.D.
The City of Long Branch appeals from a judgment of the Division of Tax Appeals of the Department of the Treasury (Division) holding that several buildings owned by Monmouth Medical Center (the Center) were exempt in whole or in part from the property taxes imposed by Long Branch.
The Center is a private, nonprofit hospital corporation organized and existing under the laws of the State of New Jersey. It was incorporated originally in 1889 as the Long Branch Hospital pursuant to an act entitled "An Act to provide for the incorporation of associations for the erection and maintenance of hospitals, infirmaries, orphanages, asylums, and other charitable institutions." L. 1877, c. 103. In 1900 the name of the hospital was changed to Monmouth Memorial Hospital Association and in 1958 it was changed to Monmouth Medical Center.
The Center operates a hospital in Long Branch, New Jersey, which provides general hospital services to residents of Long Branch and the surrounding communities. The Center owns, in addition to the hospital building proper, several other buildings which comprise what is often referred to as the "Hospital Complex of The Center." The several properties which are part of this complex and are involved in this appeal are described briefly as follows.[1]

*527 The Borden Apartments

(Block 208, Lot 2) 
The Borden apartments are located about a block and a half from the main entrance to the hospital. The building contains 70 apartment units of one, two and three-bedroom apartments. One section of the building was built in the 1950s and another section was built in the 1960s. The apartments are used exclusively as residences for resident physicians, interns and nurses on the staff of the Center. The rents charged by the Center are substantially lower than rents for comparable apartments in the area, and actually serve as a subsidy to attract qualified personnel to the Center's staff. The Center operates the Borden apartments at a net loss. The garage of the building is used by the Center to store some of its vehicles and landscaping equipment, the basements to store records and furniture, and one of the rooms for a classroom.
Long Branch assessed the land at $10,000 and the building at $240,000 for the year 1973. The Monmouth County Board of Taxation (county board) reduced the assessment on the land to $7,000 and on the building to $160,000. The Division found "that the exclusive use to which this apartment is put is an integral part of the operation of the hospital" and cancelled the 1973 assessment.

Steinan Housman Wing

(Block 205, Lot 1) 
The Steinan Housman Wing is a three-story building attached to the hospital building proper and connected by common hallways. The Center built the building in the early 1950s. Approximately one-half of the Steinan Housman Wing is occupied and used by the Center for several of its *528 departments, such as security and finance offices, medical education, pulmonary medicine, inhalation therapy, public relations, cardiac physiology, renal dialysis and tumor registry. The Monmouth County Medical Examiner also has an office in this building. The remaining half of the building is occupied and used as private physicians' offices. The physicians occupying these offices use them for the conduct of their private professional practices as well as for the performance of certain hospital staff functions. The Center charges these physicians a rental rate less than that charged for comparable office space in the area, and the financial records reveal that this building is also operated by the Center at a loss. The physicians renting these offices, with one exception, are in some way affiliated with the Center either as employee-physicians or appointed-physicians without financial remuneration.
Long Branch assessed the building at $256,850 for 1973 and the county board reduced the assessment to $131,750. The Division found that notwithstanding the fact that the physicians used the offices in part for their private practices, the Steinan Housman Wing was "exclusively used as an integral unit of the Medical Center for its convenience," and therefore cancelled the 1973 assessment.

The Professional and Educational Building

(Block 206, Lot 1) 
The Professional and Educational Building is a six-story building located directly across the street from the main hospital complex. It was constructed in 1969 with the assistance of federal funds. The Center rents the first floor of the building to Brookdale Community College, which uses the space for administrative offices and classrooms for its nurses' training program. The student nurses in the program render some services to the hospital patients. The second, third and fourth floors of the buildings are rented to physicians and one dentist for offices for the private practice of *529 medicine and dentistry. Of the physicians and dentist renting these offices, only three hold medical administration posts on the staff or are involved in the operation of the hospital. The other physicians and the dentist apparently have privileges at the hospital and render some clinic service without charge and are available for some emergency duty. The Center uses the fifth and sixth floors for storage.
Long Branch assessed the building at $665,000 for 1973. The county board reduced the assessment to $540,700. The Division found that use of the first floor of the Professional and Educational Building by the "student nurses is a direct hospital use and a necessary part thereof"; that "[t]he presence of the physicians is reasonably necessary to the operation of the hospital" and that the property was "exempt as an integral part of the entire hospital complex." The Division cancelled the 1973 assessment.

Hospital Clinic Building

(Block 157, Lots 4A and B)
The Hospital Clinic Building is a one-story structure primarily used by the Center for its psychiatric and general medical and surgical clinics. A part of the building, consisting of approximately 3,000 square feet  or 18% of its total area  is leased by the Center to a retail pharmacy. The Center charged the pharmacy a rental of $3,800 a year and the pharmacy agreed to give some discount on drug purchases by clinic patients.
Long Branch assessed the land at $2,700 and the building at $23,200 for 1973. The county board upheld the assessment on the land but reduced the assessment on the building to $17,200. The Division found that the agreement by the pharmacy to extend discounts to clinic patients was "an inadequate reason to grant exemption to the space occupied by the pharmacy." The Division, however, granted an exemption for the remaining portion of the building "actually *530 used in the direct hospital function" and reduced the assessment on the land to $500 and the building to $4,200.

I
The main thrust of Long Branch's challenge to the property tax exemptions granted the Center with respect to the foregoing properties is that these properties were not "actually and exclusively used" for hospital purposes as required by N.J.S.A. 54:4-3.6. Long Branch contends that there was a substantial commingling of private profit-making activity with legitimate hospital functions in the use of these buildings which precluded them from qualifying for tax exemption under our statute. Our property tax exemption statute, in pertinent part, provides:
The following property shall be exempt from taxation under this chapter: * * * all buildings actually and exclusively used in the work of associations and corporations organized exclusively for the moral and mental improvement of men, women and children, or for religious, charitable or hospital purposes, or for one or more such purposes; * * * the land whereon any of the buildings hereinbefore mentioned are erected, and which may be necessary for the fair enjoyment thereof, and which is devoted to the purposes above mentioned and to no other purpose and does not exceed 5 acres in extent; the furniture and personal property in said buildings if used in and devoted to the purposes above mentioned; * * * provided, in the case of all the foregoing, the buildings, or the lands on which they stand, or the associations, corporations or institutions using and occupying them as aforesaid, are not conducted for profit, except that the exemption of the buildings and lands used for charitable, benevolent or religious purposes shall extend to cases where the charitable, benevolent or religious work therein carried on is supported partly by fees and charges received from or on behalf of beneficiaries using or occupying the buildings; provided, the building is wholly controlled by and the entire income therefrom is used for said charitable, benevolent or religious purposes. The foregoing exemptions shall apply only where the association, corporation or institution claiming the exemption owns the property in question and is incorporated or organized under the laws of this State and authorized to carry out the purposes on account of which the exemption is claimed. [Emphasis supplied]
The guidelines for the interpretation of this statute are well defined.
*531 The fundamental approach of our statutes is that ordinarily all property shall bear its just and equal share of the public burden of taxation. As the existence of government is a necessity, taxes are demanded and received in order for government to function. 51 Am. Jur., Taxation, § 9, p. 42. Statutes granting exemption from taxation represent a departure and consequently they are most strongly construed against those claiming exemption. Township of Teaneck v. Lutheran Bible Institute, 20 N.J. 86, 90 (1955); Julius Roehrs Co. v. Division of Tax Appeals, 16 N.J. 493, 497-98 (1954); Trenton v. State Bd. of Tax Appeals, 127 N.J.L. 105, 106 (Sup. Ct. 1941), affirmed sub nom. Trenton v. Rider College, 128 N.J.L. 320 (E. & A. 1942). The burden of proving a tax-exempt status is upon the claimant. Trenton v. Division of Tax Appeals, 65 N.J. Super. 1, 5-6 (App. Div. 1960); Jamouneau v. Division of Tax Appeals, 2 N.J. 325, 330 (1949); Trenton v. State Bd. of Tax Appeals, supra, 127 N.J.L., at p. 106; Princeton Country Day School v. State Bd. of Tax Appeals, 113 N.J.L. 515, 517 (Sup. Ct. 1934).
Under the statute, exemption from taxation is tested by exclusiveness both of purpose of the organization and of use of the property for the moral and mental improvement of men, women and children. Trenton v. Trenton Masonic Temple Ass'n, 8 N.J. Misc. 778 (Sup. Ct. 1930), affirmed, 108 N.J.L. 419 (E. & A. 1932). * * * [Princeton Univ. Press v. Princeton, 35 N.J. 209, 214 (1961)]
See also, The Presbyterian Homes v. Division of Tax Appeals, 55 N.J. 275, 283 (1970); Bloomfield v. Academy of Med. of N.J., 47 N.J. 358, 363 (1966); Pingry Corp. v. Hillside Tp., 46 N.J. 457, 461 (1966).
While a statute granting a tax exemption such as N.J.S.A. 54:4-3.6 must be construed strictly against the one claiming the exemption, the statute must also be construed reasonably so that the apparent legislative purpose is not destroyed. See Alexander v. N.J. Power & Light Co., 21 N.J. 373, 378 (1956); Princeton Tp. v. Tenacre Foundation, 69 N.J. Super. 559, 563 (App. Div. 1961); Congregation B'Nai Yisroel v. Millburn Tp., 35 N.J. Super. 67, 72 (App. Div. 1955). Thus, each case must be viewed individually, and the party claiming the exemption must bear the ultimate burden of proving both that it was organized exclusively for one of the purposes enumerated in N.J.S.A. 54:4-3.6 and that the property for which the exemption is claimed is "actually and exclusively used" for such purposes.
*532 The test to be employed in determining whether property is "actually and exclusively used" in the work of an association or corporation organized exclusively for the purposes enumerated in N.J.S.A. 54:4-3.6 is whether the property is "reasonably necessary" for such purposes. Thus, in Princeton Tp. v. Tenacre Foundation, supra, we held that housing facilities furnished the director of a nonprofit foundation which maintained and operated a sanitorium and nursing home for the sick, because it was essential to the operation of the foundation that the director be available on the premises 24 hours a day to serve the foundation's needs, "must be considered as being `actually and exclusively used' in the work of the Foundation, within the meaning of the tax exemption specified in N.J.S.A. 54:4-3.6." Id. 69 N.J. Super. at 565. In reaching this result we adopted the test applied by the California Supreme Court in Cedars of Lebanon Hosp. v. Los Angeles Cty., 35 Cal.2d 729, 221 P.2d 31 (1950), that property used by a hospital as a school for training nurses and to provide housing for hospital interns, resident physicians, student nurses and other essential employees required to be readily available in their effective operation constituted a use exclusively for hospital purposes and brought the property within the scope of the California tax exemption:
It thus appears that under the rule of strict but reasonable construction, the phrase "property used exclusively for * * * hospital * * * purposes" should be held to include any property which is used exclusively for any facility which is incidental to and reasonably necessary for the accomplishment of hospital purposes; or, in other words, for any facility which is reasonably necessary for the fulfillment of a generally recognized function of a complete modern hospital. This test is fully supported by reason and the weight of authority. * * * [221 P.2d at 35]
Proper application of this test necessarily depends upon the facts relating to each individual property involved in this appeal. We are convinced that as applied to the Borden apartments the Division properly held such property *533 to be exempt from taxes by virtue of N.J.S.A. 54:4-3.6. The furnishing of housing facilities to resident physicians, interns and nurses on the hospital staff is reasonably necessary for the proper and efficient operation of the hospital. It cannot be seriously disputed that the operation of a large general hospital, such as the Center, requires the presence of properly qualified resident physicians, interns and nurses. The evidence established that the substantially lower rentals charged by the Center to the resident physicians, interns and nurses served as a subsidy to attract qualified people to its staff. Furthermore, it is obvious that by providing housing facilities for its resident physicians, interns and nurses in or near the hospital, the Center is better able to function properly and efficiently on a 24-hour basis. The landlord-tenant relationship existing between the Center and the resident physicians, interns and nurses renting the apartments is secondary to the primary purpose of providing housing for such needed personnel. Furthermore, the Center did not operate the building at a profit. Cf. Pingry Corp. v. Hillside Tp., supra. In these circumstances, we hold that the Borden apartments are an integral part of the Center's facilities and "actually and exclusively used" to carry out its hospital purposes. Cf. Princeton Tp. v. Tenacre Foundation, supra 69 N.J. Super. at 565.
The conclusion that we reach is supported by many decisions elsewhere. For example, in Cedars of Lebanon Hosp. v. Los Angeles Cty., supra, the court held that property used by a hospital to provide housing for its interns, resident physicians and student nurses was used exclusively for hospital purposes and entitled to an exemption from taxation, stating:
The same reasoning applies with respect to the exemption of property used to provide a nurses' home as an incident to the operation of the hospital. It is a matter of common knowledge that in many, if not most, hospitals, nurses and student nurses sleep in the hospital building or on premises near by which have been acquired by the hospital for furnishing such accommodations. Manifestly, emergencies may arise from time to time during the night requiring immediate *534 attention and which make it necessary to have more nursing personnel available than is actually on nighttime duty. Such situation can be met, as alleged by plaintiffs, only by providing housing facilities upon the hospital grounds for nurses, student nurses, and kindred aids. Typical of such living quarters were those furnished by plaintiff Cedars of Lebanon Hospital in "a building known as Lebanon Hall * * * attached to the main building of the hospital" and for which "each of the nurses" so accommodated "makes a payment of $10.00 per month" to the hospital. As set forth in the pleadings in these cases, the use of such property for such purposes is a use for a facility which is incidental to and reasonably necessary for the accomplishment of hospital purposes, and the property so used should be held to be tax exempt. Such conclusion seems to be clearly in accord with the weight of authority. [221 P.2d, at 37; citations omitted]

* * * * * * * *
The same considerations apply with respect to the exemption of hospital property used to provide housing facilities for interns, resident doctors, superintendents, and other members of the hospital staff  that the administration of the affairs of the institution requires that certain personnel and employees be located on or near its grounds to the end that its operation may be efficiently conducted and supervised, and that emergency cases may be effectively handled as they arise. Since it is commonly expected by the public that admittance to a hospital may be had at any hour of the day or night, such twenty-four hour service necessarily involves the presence at all time of adequate help and trained personnel. * * * [221 P.2d at 38]
See also Hartford Hosp. v. Hartford, 160 Conn. 370, 279 A. 2d 561 (Sup. Ct. Err. 1971); Columbia Hosp. Ass'n v. Milwaukee, 35 Wis.2d 660, 151 N.W.2d 750 (Sup. Ct. 1967); Oakwood Hosp. Corp. v. Michigan State Tax Comm'n, 374 Mich. 524, 132 N.W. 2d 634 (Sup. Ct. 1965); Maxwell v. Good Samaritan Hosp. Ass'n, 161 So.2d 31 (Fla. Ct. App. 1964); St. Luke's Hosp. v. Boyland, 12 N.Y.2d 137, 237 N.Y.S.2d 308, 187 N.E.2d 769 (Ct. App. 1962); Aultman Hosp. Ass'n v. Evatt, 140 Ohio St. 114, 42 N.E.2d 646 (Sup. Ct. 1942). See also, Annotation, "Propperty used by personnel as living quarters or for recreation purposes as within contemplation of tax exemptions extended to property of religious, educational, charitable, or hospital organizations," 15 A.L.R.2d 1064 (1951).
*535 Accordingly, the judgment of the Division cancelling the 1973 assessment on the Borden apartments is affirmed.

II
However, applying the same test to the Steinan Housman Wing and to the Professional and Educational Building, we hold with equal conviction that these buildings do not qualify for tax exemption, and that the Division erred in cancelling the 1973 assessments levied by Long Branch. The evidence demonstrates beyond any question that these buildings were not "actually and exclusively used" for hospital purposes. The Center rented portions of these buildings to physicians and one dentist for offices wherein they conducted their private professional practices. The physicians and dentist treated their private patients in these offices and presumably derived pecuniary profit therefrom. The fact that the Center may have rented these offices at a rate less than the prevailing rate for comparable offices in the area and did not operate these buildings at a profit does not change the fundamental commercial nature of the use of these buildings. The utilization of these buildings for the private practice of medicine and dentistry is purely and simply a private profit-making activity and is in direct competition with the privately owned commercial rental buildings and goes far beyond the traditional functions and purposes of a hospital. Moreover, exemption from taxation for these buildings cannot be granted because it may be convenient for the Center to have staff physicians maintain their private offices in close proximity to the hospital, or because these physicians may perform some of their hospital duties in their private offices. Convenience is not the test; the test is reasonable necessity for hospital purposes, and the use of these buildings for private professional offices is not reasonably necessary for the Center's hospital purposes. In our view, there is no valid basis to grant to the Center a tax exemption for the Steinan Housman Wing and the Professional and Educational Building thereby imposing an increased *536 tax burden on the remaining taxpayers of the community. To hold otherwise would do violence to the principles of construction concerning our exemption statute which have been consistently followed in this State.
Reliance by the Center on the case of Genesee Hospital, Inc. v. Wagner, 76 Misc.2d 281, 350 N.Y.S.2d, 582 (Sup. Ct. 1973), to support its claimed tax exemptions is unavailing. The decision was reversed by the Appellate Division of the New York Supreme Court sub nom. Genesee Hospital v. Wagner, 47 App. Div.2d 37, 364 N.Y.S.2d 934 (1975). There, as here, a portion of an office building owned by the tax exempt Genesee Hospital housed the private offices of staff physicians. The office space was made available only to physicians on the hospital staff. The Appellate Division held that the portions of the building leased to physicians to carry on the private practice of medicine was not reasonably incident to the major purposes of the hospital, and that such portions of the building did not qualify for tax exemption as real property "used exclusively" for exempt corporate purposes under the Real Property Tax Law, Section 421.[2] The basis upon which the New York Appellate Division reached its conclusion in part is applicable here:
The remaining focus must be upon the question of whether the use of Doctors Office Building constitutes a use reasonably incident to the furtherance of the primary corporate purpose. It has generally *537 been held that such uses as private housing facilities (St. Luke's Hospital v. Boyland, supra) recreational facilities (Shrine of Our Lady v. Bd. of Assessors, 40 A.D.2d 75, 337 N.Y.S.2d 786, affd. 33 N.Y.2d 713, 349 N.Y.S.2d 993, 304 N.E. 2d 563) hospital parking lot (Mtr. of Ellis Hosp. v. Fredette, 27 A.D.2d 390, 279 N.Y.S.2d 925) are uses primarily in furtherance of exempt corporate purposes. Here, however, there is a commercialization and profit-making which goes well beyond the hospital's traditionally nonprofit functions. The private practice of medicine by the attending physicians in the hospital's professional office building is clearly the kind of profit-making activity intended to be excluded by the Legislature when it created the statutory exemption under RPTL § 421. The clear distinction between the instant case and other cases dealing with commercial, corporate activity is that here we have third parties receiving pecuniary profit from their own private practice of medicine which is integrally related to the operation of the real property.
The trend of the statutory exemption law has been to restrict real property tax exemptions (Assn. of Bar, City of N.Y. v. Lewisohn, 34 N.Y.2d 143, 356 N.Y.S.2d 555, 313 N.E.2d 30) and the Court of Appeals has pointed out that in pursuance of this manifest intent of recent legislation tax exemptions should be construed strictly against the taxpayer.
"* * * legislative history of section 421 of the Real Property Tax Law, as amended * * * observed that exemptions in this century have proliferated at an alarming rate * * *. Were the growth of exempt properties to continue at the rate established during the first half of this century, it was estimated that by 1985 one half of all real property on the tax rolls of local governments would be exempt from taxation * * *.
Against this background, the Legislature enacted chapter 414 of the Laws of 1971. Its purpose was clear  to stem the erosion of municipal tax bases by permitting local governments to terminate exemptions for nonprofit organizations other than those conducted exclusively for religious, education, charitable, hospital or cemetery purposes. * * *" (Assn. of Bar, City of N.Y. v. Lewisohn, supra, pgs. 155-156, 356 N.Y.S.2d p. 563, 313 N.E.2d p. 36).
In light of this expressed legislative intent a case law extension of the hospital purpose would not be warranted so as to permit an office building for the private practice of medicine to be exempt by virtue of its ownership by an exempt hospital corporation (see, also, 3 Op. Counsel, S.B.E.A. No. 12, which rules that uses are not exempt as reasonably incident to hospital purposes). [364 N.Y.S.2d at 942-943]
See also, Butterfield v. Philipstown, 48 A.D.2d 289, 368 N.Y.S.2d 852 (Sup. Ct. 1975); Community-General *538 Hosp. v. Onondaga, 80 Misc.2d 96, 362 N.Y.S.2d 375 (Sup. Ct. 1974).
Accordingly, the judgment of the Division cancelling the 1973 assessments on the Steinan Housman Wing and the Professional and Educational Building is reversed, and the assessments against these properties for the year 1973 are reinstated in the amount of $131,750 on the building of the Steinan Housman Wing and $540,700 on the building of the Professional and Educational Building. These are the amounts set by the county board when it reduced the original assessments by Long Branch.

III
Finally, we hold that the Division erred by granting a partial exemption to the Hospital Clinic Building. The exemption was granted for that portion of the building actually used for hospital purposes. In order to qualify for an exemption under N.J.S.A. 54:4-3.6, the building must be "actually and exclusively used" for exempt purposes. Here a portion of the Clinic Building was rented by the Center to a retail pharmacy and thus it is perfectly obvious that the Clinic Building was not "actually and exclusively used" for hospital purposes. Cf. Cresskill v. Northern Valley Evan. Free Church, 125 N.J. Super. 585, 587 (App. Div. 1973). The Division was without statutory authority to grant an exemption for a portion of this building. Accordingly, the judgment of the Division is reversed and the assessment against the property for the year 1973 is reinstated in the amounts of $2,700 on the land and $17,200 on the buildings. The amount of the assessment on the building was set by the county board of taxation when it reduced the original assessment.

CONCLUSION
For the foregoing reasons the judgment of the Division cancelling the assessment for 1973 on the Borden Apartments *539 is affirmed; the judgment of the Division cancelling the assessment for 1973 on the Steinan Housman Wing and the Professional and Educational Building is reversed and the assessments against these properties for the year 1973 in the amounts set forth above are reinstated, and the judgment of the Division granting an exemption to a portion of the Hospital Clinic Building and reduction of the assessment is reversed and the assessment against the property for the year 1973 in the amount set forth above is reinstated.
We find no merit in any of the other issues raised by Long Branch, and we expressly deny its motion to suppress portions of the Center's brief.
NOTES
[1] The final judgment of the Division from which Long Branch appeals included a building formerly known as "The Family Practice Center" located at 130 Dunbar Avenue (Block 207, Lot 4). The building was acquired by the Center in July 1971 to be used as a training center and administrative offices. Fire destroyed the property in July 1972 and as a result on October 1, 1972 it was vacant and not in use. The land and building were assessed at $17,600 for the year 1973. The county board of taxation reduced the assessment to $8,600. The Division held that the property was taxable for the year 1973 and dismissed the Center's appeal. The Division also dismissed Long Branch's appeal from the reduction in the assessment for failure to introduce any testimony with respect to the value of the property. Since Long Branch has not presented any argument seeking a reversal of this portion of the judgment, we deem that it has abandoned its appeal as to this property. In any event, our review of the records satisfies us that the Division correctly dismissed Long Branch's appeal as to this property.
[2] A partial tax exemption may be granted by the New York Real Property Tax Law, § 421, subdiv. 2, which in part provides:

If any portion of such real property is not so used exclusively to carry out thereupon one or more of such purposes but is leased or otherwise used for other purposes, such portion shall be subject to taxation and the remaining portion only shall be exempt. * * *"
New Jersey does not have a comparable provision in its tax exemption statute. See N.J.S.A. 54:4-3.3, et seq. If an exemption from taxation for a portion of a building used for tax-exempt purposes is desirable, then that determination must be made by our Legislature. See Teaneck Tp. v. Lutheran Bible Institute, 20 N.J. 86, 91 (1955).