BIANCO, J.T.C.
This opinion constitutes the court’s decision in the cross-motions of the above referenced matter. Both the defendant, Town of Morristown (hereinafter “Morristown”), and the plaintiff, AHS Hospital Corp. d/b/a/ Morristown Hospital (hereinafter the “Hospital”), have moved for partial summary judgment with respect to certain claims of property tax exemption asserted by the Hospital for Block 4201, Lot 1.03 commonly known as 68-200 Madison Avenue (hereinafter the “subject property”). Specifically, Morris-town argues that office space used by private physicians and other private parties pursuant to either a lease or time share agreement *377 in the Carol G. Simon Cancer Center (hereinafter the “Cancer Center”) and the Goryeb Children’s Hospital at Morristown Memorial (hereinafter the “Children’s Hospital”) (collectively hereinafter the “office space”), and space rented to Au Bon Pain Co., Inc. (hereinafter “Au Bon Pain”) in the main hospital building (hereinafter the “café space”) are subject to taxation. The Hospital, in its own motion, argues that the remainder of the subject property is exempt from taxation. Each party timely opposed the other’s motion. For the reasons stated in this opinion, Morris-town’s motion for partial summary judgment is granted and the Hospital’s motion for partial summary judgment is denied.
The Hospital is the owner of the subject property. For the years 2006, 2007, and 2008 (hereinafter the “tax years”), the Hospital claimed an exemption for the subject property under N.J.S.A. 54:4-3.6. In response, Morristown levied omitted assessments on the subject property for the tax years 2006 and 2007 and a tax assessment for the tax year 2008. The Hospital timely challenged each assessment by filing directly with the Tax Court. The cross-motions for partial summary judgment ensured.
The Hospital is a not-for-profit corporation organized under the laws of New Jersey. It is organized for scientific, educational, and charitable purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code of 1986, as amended, and therefore is exempt from federal income tax. It provides a variety of inpatient and outpatient services at the subject property. The subject property consists of several buildings and structures, including, the main hospital building, the Cancer Center, the Children’s Hospital, the Gagnon Cardiovascular Institute at Morristown Memorial (hereinafter the “Cardiovascular Institute”), and the visitor’s parking garage (hereinafter the “garage”).
The Cancer Center provides medical care and other related services to cancer patients. It occupies four floors consisting of approximately 118,488 square feet. It is physically connected to the main hospital building, but has its own exterior entrance. For the purposes of regulatory oversight, the Cancer Center is included in the Hospital’s license and accreditation. Services performed *378 in the Cancer Center are billed as if the Cancer Center is a department within the Hospital. In other words, instead of maintaining separate financial records for the Cancer Center, its finances are factored into those of the Hospital.
Portions of the Cancer Center are used by private physicians and other private parties as office space pursuant to either leases or time share agreements with the Hospital. Any private physician who uses office space is required to dedicate a significant amount of his or her practice to cancer care and be a member of the Hospital’s medical staff. The private physicians and other private parties pay fair market value to the Hospital for the use of the office space.[3] Portions of the Cancer Center not leased or subject to a time share agreement with private physicians or other private parties are occupied by Hospital employed physicians or Hospital based departments.
During the tax years at issue, the following private physicians and other private parties used office space in the Cancer Center: Hematology-Oncology Associates of Northern New Jersey, P.A.; Oncology & Hematology Specialists, P.C.; North Jersey Thoracic Surgical Associates, P.C.; Allied Surgical Group, P.A.; Morris-town Pathology Associates, P.A.; James R. Wong, M.D.[4]; Jean Marie Rosone[5]; Adult & Pediatric Urology Group, PA; Morris- *379 town Urology Associates, PA; and Nazly M. Shariati, M.D. With the exception of Dr. Wong, Ms. Rosone, and Dr. Shariati[6], the other private physicians and private parties are all incorporated in the state of New Jersey.
The private physicians who used office space were also members of the Hospital’s medical staff. As a member of the Hospital’s medical staff, the private physicians were not employees of the Hospital, but were afford certain privileges at the Hospital. For example, the private physicians were allowed to register their patients with the Hospital for the purposes of using one of the Hospital’s procedure rooms. In such an event, the patient was charged by the Hospital for the use of the room and Hospital supplies, and by the private physician for his or her services. Certain private physicians also held leadership or administrative positions at the Hospital and were paid as independent contractors in that regard.[7]
The Children’s Hospital provides pediatric specialty care to Hospital patients. It consists of approximately 85,391 square feet. Portions of the Children’s Hospital were used by private physicians pursuant to either leases or time share agreements with the Hospital. During the tax years at issue, the following private physicians used office space in the Children’s Hospital: John P. Connor, M.D.; and Morristown Urology Associates, P.A. Portions not leased or subject to a time share agreement with private physicians were occupied by Hospital employed physicians or Hospital based departments.
The garage is an L-shaped parking structure that provides parking for Hospital patients, visitors, and employees. The private physicians and other private parties who used office space were also afforded parking privileges pursuant to their respective *380 leases and time share agreements. Gateway Security Systems (hereinafter “Gateway”), an independent contractor, administered the parking in the garage pursuant to an agreement with the Hospital dated July 21, 2004. The Hospital, however, maintained the facility and set the schedule of parking rates and hours. All funds received by Gateway in the operation of the garage were deposited in a single cheeking account. Gateway also prepared monthly financial records. According to the Hospital, its parking garages[8] are operated at a loss.
Finally, the café space consists of approximately 2,500 square feet located in the main hospital building. The lease agreement between the Hospital and Au Bon Pain, dated March 15, 1999, provided an initial lease period of ten years, followed by two successive extension periods of five years each. Pursuant to the lease agreement, Au Bon Pain paid the Hospital an annual basic rental of $30,000.00, plus eight percent (8%) of gross sales in excess of $375,000.00. According to the Hospital, all rent received from the operation of Au Bon Pain was applied to the Hospital’s Women’s Association, which is a volunteer based organization established to support the Hospital in advancing the quality of healthcare.[9]

Summary Judgment

New Jersey’s Court Rules provide that summary judgment is appropriate where:
The judgment or order sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.
[R. 4:46-2(c).]
The moving party sustains the burden to show no genuine issue of material fact exists. Judson v. Peoples Bank and Trust, 17 N.J. 67, 74, 110 A.2d 24 (1954); see also Liberty Surplus Ins. *381 Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 916 A.2d 440 (2007). The opposing party cannot defeat the motion for summary judgment simply by pointing to any fact in dispute. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 529, 666 A.2d 146 (1995). Denial of summary judgment occurs when the opposing party brings forward evidence that creates a genuine issue for a material fact. Ibid. With respect to Morristown’s motion there are no genuine issues as to any material facts. However, as to the Hospital’s motion, Morristown has brought forth evidence that creates genuine issues of material fact.

N..J.S.A. 54:4-3.6

N.J.S.A. 54:4-3.6 provides in pertinent part that:
The following shall be exempt from taxation under this chapter ... all buildings actually used in the work of associations and corporations organized exclusively for hospital purposes, provided that if any portion of a building used for hospital purposes is leased to profit-making organizations or otherwise used for purposes which are not themselves exempt from taxation, that portion shall be subject to taxation and the remaining portion only shall be exempt; ... provided, in case of all the foregoing, the buildings, or the lands on which they stand, or the associations, corporations or institutions using and occupying them as aforesaid, are not conducted for profit____ The foregoing exemption shall apply only where the association, corporation or institution claiming the exemption owns the property in question and is incorporated or organized under the laws of this State and authorized to carry out the purposes on account of which the exemption is claimed____

Ubid.]

To secure an exemption under N.J.S.A. 54:4-3.6, the following three criteria must be met: “(1) [the owner of the property] must be organized exclusively for the [exempt purpose]; (2) its property must be actually and exclusively[10] used for the tax-exempt purpose; and (3) its operation and use of its property must not be conducted for profit.” Hunterdon Medical Center v. Township of Readington, 195 N.J. 549, 562, 951 A.2d 931 (2008) (quoting Paper *382 Mill Playhouse v. Millbum Township, 95 N.J. 503, 506, 472 A.2d 517 (1984)) (alternations in original).
It has long been recognized that “all property shall bear its just and equal share of the public burden of taxation.” Princeton University Press v. Borough of Princeton, 35 N.J. 209, 214, 172 A.2d 420 (1961). “Statutes granting exemption from taxation represent a departure and consequently they are most strongly construed against those claiming exemption.” Ibid. Accordingly, “[t]he burden of proving a tax-exempt status is upon the claimant.” Ibid. Notwithstanding, N.J.S.A. 54:4-3.6 “must also be construed reasonably so that the apparent legislative purpose is not destroyed.” City of Long Branch v. Monmouth Medical Center, 138 N.J.Super. 524, 531, 351 A.2d 756 (App.Div.1976) (citations omitted).
In their respective briefs and at oral argument, the parties differed over the Hospital’s claim that it has satisfied both the second and third prong of the Paper Mill Playhouse test.[11] The Supreme Court of New Jersey has written that “[t]he use-for-an-exempt-purpose [prong] is superfluous when property is otherwise ineligible because a for-profit activity is conducted on it or because the property itself is not owned by an entity eligible for tax exemption under N.J.S.A 54:4-3.6.” Hunterdon Medical Center, supra, 195 N.J. at 566 n. 13, 951 A.2d 931. The court finds that resolution of the third prong is dispositive for both motions.
The test for whether property is used for profit is a “pragmatic inquiry into profitability---- [A] realistic common sense analysis of the actual operation of the taxpayer; mechanical centering on income and expense figures is to be avoided.” Paper Mill Playhouse, supra, 95 N.J. at 521, 472 A.2d 517. While N.J.S.A. 54:4-3.6 requires that the operation and use of property not be conducted for profit, “[t]here is nothing in the statute requiring, as a condition of tax exemption, that a [hospital] must *383 actually operate at a loss.... ” Id. at 522, 472 A.2d 517 (quoting Trenton v. N.J. Div. of Tax Appeals, 65 N.J.Super. 1,10,166 A.2d 777 (App.Div.1960)). “A crucial factor is where the profit goes.... ‘[I]f [the court] can trace it into someone’s personal pocket [the hospital] [will] not be entitled to tax exemption.’” Ibid, (quoting Trenton, supra, 65 N.J.Super. at 12, 166 A.2d 777).

Morristown’s Motion for Summary Judgment

As to the tax exempt status of the office space, in City of Long Branch, the Appellate Division was asked to determine the tax exempt status of several buildings owned by the Monmouth Medical Center (hereinafter the “Center”). City of Long Branch, supra, 138 N.J.Super. at 526, 351 A.2d 756. One building, the Steinan Housman Wing, was used in the following manner:
The remaining half of the building is occupied and used as private physicians’ offices. The physicians occupying these offices use them for the conduct of their private professional practices as well as for the performance of certain hospital staff functions. The Center charges these physicians a rental rate less than that charges for comparable office space in the area, and the financial records reveal that this building is also operated by the Center at a loss. The physicians renting these offices, with one exception, are in some way affiliated with the Center either as employee-physicians or appointed-physicians without financial remuneration. [Id. at 528, 351 A.2d 756.]
Another building, the Professional and Educational Building, was in part:
[RJented to physicians and one dentist for offices for the private practice of medicine and dentistry. Of the physicians and dentist renting these offices, only three hold medical administration posts on the staff or are involved in the operation of the hospital. The other physicians and the dentist apparently have privileges at the hospital and render some clinic service without charge and are available for some emergency duty.
[Id at 528-29, 351 A.2d 756.]
The Appellate Division found that:
The evidence demonstrates beyond any question that these buildings were not “actually and exclusively used” for hospital purposes. The Center rented portions of these buildings to physicians and one dentist for offices wherein they conducted their private professional practices. The physicians and dentist treated their private patients in these offices and presumably derived pecuniary profit therefrom. The fact that the Center may have rented these offices at a rate less than the prevailing rate for comparable offices in the area and did not operate these buildings at a profit does not change the fundamental commercial nature of the use *384 of these buildings. The utilization of these buildings for the private practice of medicine and dentistry is purely and simply a private profit-making activity and is in direct competition with the privately owned commercial rental buildings and goes far beyond the traditional functions and purposes of a hospital [7d at 535, 351 A.2d 756 (emphasis added).] [12]
Similar to the facts in City of Long Branch, the office space in the present matter was used by private physicians for the purposes of conducting their private medical practices, all of the private physicians were members of the Hospital’s medical staff, and a few of the physicians held administrative positions at the Hospital.[13] In addition, the following evidence is undisputed: The private physicians were not employees of the Hospital and did not receive compensation from the Hospital unless they held an administrative position. All the private physicians except Dr. Wong, Ms. Rosone, and Dr. Shariati were incorporated in the State of New Jersey as for-profit entities. When a private physician used one of the Hospital’s procedure rooms, the patient was charged by the Hospital for the use of the room and Hospital supplies, and by the private physician for his or her services. Accordingly, the facts here, like the facts in the City of Long Branch, give rise to the presumption that the private physicians[14] derived pecuniary profit from their use of their respective office space.
The Hospital argues, however, that the Cancer Center and the Children’s Hospital are distinguishable from the two buildings in City of Long Branch because they are actually part of the Hospital’s main campus,[15] the physicians who used the office space *385 only cared for Hospital cancer patients in that space,[16] and all the physicians are members of the Hospital staff and therefore they actually run the Cancer Center and Children’s Hospital.
The Hospital argument is unpersuasive. The facts relied upon by the Hospital are material as to whether the use of the office space by the private physicians was “reasonable necessary” for “hospital purposes,” which is the second, rather than the third prong of the Paper Mill Playhouse test. See Paper Mill Playhouse, supra, 95 N.J. at 506, 472 A.2d 517. Regardless if such a use is reasonably necessary under the expanded definition of “hospital purposes,”[17] it does not negate the commercial nature of the use of the office space by the private physicians and the other private parties.[18] Moreover, the Hospital has failed to put forth any evidence that any of the private physicians or third parties operated as a not-for-profit entity.
As to the tax exempt status of the café space, in Jersey Shore, the Tax Court found that a hospital’s on-site coffee shop was not *386 reasonably necessary and therefore subject to taxation because the management agreement between the hospital and the operator of the coffee shop reflected a profit-making purpose, as evidence by the fact that under the agreement, any profits were to be split sixty-forty (60%-40%) between the hospital and the operator. Jersey Shore, supra, 14 N.J.Tax at 62. While the Jersey Shore court recognized that “[ujnder a different contractual arrangement, a hospital coffee shop, might be exempt[,]” the arrangement of that particular arrangement precluded the property from an exemption. Id. at 65. In dicta, the Jersey Shore court also found that even if the coffee shop was deemed reasonably necessary for hospital purposes, it would have failed the third prong of the Paper Mill Playhouse test.
Under [the third prong], to be exempt, the coffee shop must not be conducted for profit. N.J.S.A. 543-6. [sic ] The operating agreement between [the hospital] and the [operator] plainly establishes that the coffee shop was conducted for profit since the agreement contemplates a 60-40 sharing of profits. In view of the profit-sharing arrangement and the charging of competitive prices, it is impossible to conclude that the shop was not being operated for profit. Thus, even assuming that the shop was operated to further the hospital’s purposes, that fact would not carry the day under the third [prong].
Any other conclusion would create an artificial distinction between leases of hospital property to “profit-making organizations,” which are clearly taxable under the 1983 statutory amendment ... and operating agreements permitting the use of hospital property by profit-making organizations. Whether the use of the real estate is by way of a lease or an operating agreement should not affect the taxability of a use by a profit-making entity.
[Id. at 66.]
The Jersey Shore court’s application of the third prong was discussed with approval by the Supreme Court of New Jersey in Hunterdon Medical Center.
On the other hand, the exemption for the coffee shop was rejected because the shop was operated pursuant to a profit-sharing agreement between the hospital and the company operating the coffee shop. Discussion of the reasonably necessary test was superfluous to that part of the Jersey Shore decision, however, and the Tax Court recognized as much when it stated that although ‘various sendees, such as laundiy, accounting, parking, and residential housing for hospital personnel, may be reasonably necessaiy to a hospital purpose if associated with a functioning hospital ... [h]ere, the profit-making purpose of the arrangement precludes an exemption.’ ”
[Hunterdon Medical Center, supra, 195 N.J. at 566, 951 A.2d 931 (quoting Jersey Shore, supra, 14 N.J.Tax at 65) (alteration in the original) (internal citation omitted).]
*387 The lease between the Hospital and Au Bon Pain is similar to the management agreement in Jersey Shore in that both agreements provide for the possibility that each contracting party will net a profit. The management agreement in Jersey Shore required that any excess revenues over expenses be split sixty— forty (60%-40%) between the hospital and operator. Based on this arrangement, the Jersey Shore court found that both the hospital and the operator were able to “net a profit to the extent [the operator] [kept] its prices current and its costs in line.” Jersey Shore, supra, 14 N.J.Tax at 64. Here, the lease between the Hospital and Au Bon Pain required Au Bon Pain to pay the Hospital eight percent (8%) of gross sales in excess of $375,000.00. While on its face the lease here is not as explicit as to profit sharing as was the management agreement in Jersey Shore, it nevertheless provided an opportunity for both the Hospital and Au Bon Pain to net a profit. Like the operator in Jersey Shore, Au Bon Pain could net a profit to the extent it kept its prices current[19] and expenses down. Accordingly, the café space was leased to a “profit making organization” and is therefore subject to taxation. N.J.S.A. 54:4-3.6.

The Hospital’s Motion for Summary Judgment

Morristown argues that the Hospital is not entitled to summary judgment as to the remainder of the main hospital building, the Cardiovascular Institute, and the garage because it has failed to submit evidence to show that the use or operation of those portions of the subject property was not conducted for profit. In support of this argument Morristown puts forward the following evidence: the Hospital’s Form 990 for 2007 declares “unrelated business income” in the amount of $3,371,005 for lab specimen processing and its Form 990-T “describe^] the organization’s primary unrelated activity” as “lab services to non patients”; for 2006 and 2007, the Hospital provided $82,646,000 and $84,804,000 respectively in charity care[20], while declaring on its *388 Form 990 for 2007 roughly $1.1 billion in income-producing activity; the Hospital’s Form 990 for 2007 also lists the compensation for its senior executive official, Mr. Joseph Trunfio, as $2,855,072, which surpasses the average and median total compensation for the top twenty hospital senior executive officials in the United States; and finally pursuant to leases and time share agreements placed in evidence, the private physicians and other third parties who used office space were afforded parking privileges in the garage.
The evidence put forth by Morristown demonstrates that there is a genuine issue as to whether the use or operation of those portions of the subject property was conducted for profit. Specifically it raises a genuine issue as to the actual operation of the Hospital and as to whether profit can be traced to someone’s personal pocket. Accordingly, the Hospital’s motion is denied.

Conclusion

In order to claim an exemption under N.J.S.A. 54:4-3.6, the property owner must show that the operation and use of its property was not conducted for profit. Here, there is undisputed evidence that the office space in the Cancer Center and Children’s Hospital and the café space in the main hospital building were in fact used for profit during the tax years. As to the rest of the subject property, Morristown has put forth material facts that raise genuine issues as to whether the subject property is operat *389 ed for profit. Accordingly, Morristown’s motion is granted, and the Hospital’s motion is denied.

 The Hospital contends that in leasing office space to private physicians at fair market value as opposed to allowing the physicians to use the space free of charge or at reduced rates, it is complying with Federal statutes and regulations, including the Anti-Kickback Statute and the Stark Law. 42 U.S.C. 1320a-7b(b); 42 C.F.R. 1001.952(b); 42 U.S.C. 1395nn(e); 42 C.F.C. 411.357(4).

 On or about September 28, 2003, the Hospital entered into an Exclusive Contract for Radiation Oncology Service and lease for use of the hospital premises for medical practice with Dr. Wong. Dr. Wong is a member of the Hospital’s staff and is the exclusive provider of radiation oncology services at the Hospital.

 Ms. Rosone is a full-time employee of the Hospital. She is a licensed social worker who provides services to the Hospital’s employees. In addition, she conducts a private practice during the evening hours. To facilitate her private practice, she rents from the Hospital the office space it provides her during the day.

 The record is silent as to their chosen business structure.

 For example, Dr. Papish and Dr. Farber, physician members of Hematology-Oncology Associates of Northern New Jersey, held the following respective positions at the Hospital: the Medical Director at the Cancer Center and the Section Chief of the Hematology/Oncology subspecialty in the Hospital's Department of Internal Medicine.

 There are three garages in total; two of which are not subject to this appeal.

 Neither the lease between Au Bon Pain and the Hospital, nor images from the Women’s Association website substantiates this claim.

10 In 1983 the Legislature eliminated the requirement that hospital-owned property be "exclusively” used for hospital purposes. L. 1983, c. 224, § 1. The amendment was in response to City of Long Branch v. Monmouth Medical Center, 138 N.J.Super. 524, 351 A.2d 756 (App.Div.1976), which denied an exemption for a clinic building because a portion of it was rented to a pharmacy and therefore the building was not "actually and exclusively used” for hospital purposes. Id. at 538, 351 A.2d 756.

 In neither its briefs, nor at oral argument did Morristown challenge the Hospital's claim that it has satisfied the first prong of the test. Accordingly, the court will not address that prong herein.

 City of Long Branch was decided before the Legislature amended the statute in 1983 to exclude the requirement that the property be used "exclusively" for hospital purposes.

 The fact that the Hospital charged the private physicians fair market value, instead of below market rates as in City of Long Branch, is immaterial in that it does not effect the fundamental commercial nature of the use of the office space.

 This analysis applies equally to the other third-parties who used the office space pursuant to a lease or time share agreement, such as Ms. Rosone.

 Under the Supreme Court’s expanded definition of "hospital purposes," the exact location of the building in question is immaterial. See Hunterdon Medical *385 Center, supra, 195 N.J. at 572, 951 A.2d 931 (“[W]e further hold that whether the hospital delivers such services in the hospital's main facility, in another facility on the main campus, or in a hospital-owned building adjoining or adjacent to the main hospital building, makes no difference in the analysis for a statutory exemption under the N.J.S.A. 54:4-3.6's use-for-an-exempt-purpose criteria.'').

 The Hospital raises this fact only in its briefs. However, the fact is neither substantiated by a certification nor by an exhibit. Even if true, the fact that the private physicians only cared for the Hospital's patient in the office space does not negate the fact that the private physicians derived pecuniary profits from the use of the space. Therefore the fact is not material.

 In an attempt to "acknowledge the variety of activities that a modern hospital can be expected to perform for patients[,]'' the Supreme Court of New Jersey expanded the meaning of "hospital purposes” beyond the traditional twenty-four hour, continuous care notion previously adopted by the courts. Hunterdon Medical Center, supra, 195 NJ. at 553, 951 A.2d 931. The Court held that "any medical or diagnostic service that a hospital patient may require preadmission, during the hospital stay (whether it is for less than day or for one or more days), or post-admission presumptively constitutes a core 'hospital purpose.' ” Id. at 554, 951 A.2d 931.

 As to the other third-parties, the Hospital admits in its moving papers that Ms. Rosone used her office space in the evening for her private practice.

 The lease between Au Bon Pain and the Hospital is silent as to price control.

 in their moving papers, counsel for the Hospital provided the court with the figures of $82,646 and $84,804 which were purported to represent the Hospital's *388 charitable contributions for 2006 and 2007 respectively. These figures were incorporated into the court’s May 9, 2010 letter opinion. The Hospital’s counsel has since advised (in a letter dated April 1, 2010) that the original figures provided were in error, and that each figure should have contained an additional three zeros at the end. The error has no baring on the court’s decision herein. Accordingly, the corrected figures representing how the Hospital’s charitable contributions for 2006 and 2007 should have appeared in the letter opinion, now appear above. In consenting to the correction of this error for the purposes of this opinion, Morristown does not concede that the corrected figures are in fact the Hospital’s actual charitable contributions for 2006 and 2007. Morristown maintains that while the corrected figures rectify the typographical error of the Hospital’s counsel, they are not dispositive on the remaining issues to be decided in this case.