PATERSON RESCUE MISSION, PROSECUTOR, v. WILLIAM HIGH, RECEIVER OF TAXES, AND THE CITY OF PATERSON.

Submitted July 14, 1899—Decided November 13, 1899.

1. An association established and sustained by contributions from the charitable, whose object is to furnish food, lodging and clothing to the needy, requiring work in aid of the charity from those who are able to work, the profits of which, after paying expenses, go into the funds of the institution and are used for its charitable purposes, is an associa-

tion for a charitable purpose, whose lands and buildings necessary for its object are exempt from taxation under the third section of the act (*Gen. Stat., pp.* 3320, 3321), which exempts all buildings used exclusively for charitable purposes, with the land whereon the same are erected, and which may be necessary for the fair enjoyment thereof, and the furniture and personal property used therein.

2. Payment of salaries to a superintendent and an assistant, like servants' wages, are expenses incident to the execution of the charitable purpose for which the institution was established, and does not deprive the association of the exemption from taxation conferred by the statute.

3. A covenant in a mortgage upon the property of the association not to apply for any deduction by reason of any mortgage from the taxable value of the lands, does not affect its right to exemption from taxation under the statute. Such a covenant is simply nugatory with respect to the taxation from which the association by statute was exempt.

On *certiorari.* In matter of taxation.

Before Justices Depue, Gummere and Ludlow.

For the prosecutor, *Eugene Stevenson* and *John B. Humphreys.*

For the defendants, *Thomas C. Simonton.*

The opinion of the court was delivered by

Depue, J. This *certiorari* brings up an assessment of taxes in the city of Paterson, for the year 1898. The taxes were assessed against the Paterson Rescue Mission on four lots on Mill street, at a valuation of $11,400, amounting to $280.44.

The Paterson Rescue Mission was incorporated April 2d, 1895, under the provisions of an act of the legislature, entitled "An act to incorporate benevolent and charitable associations," and the several supplements thereto. *Gen. Stat., p.* 149 *et seq.* The act under which this incorporation was effected provides "that the sole and exclusive objects of incorporations under this act shall be to relieve or support such of the members thereof or such other persons as shall by sickness, casualty, old age or other causes be rendered incapable

of attending to their usual occupation or calling; to discourage intemperance and diffuse the principles of benevolence and charity; * * * to give and extend benevolent and charitable relief and assistance to persons who are not members or corporators; *to promote religion, morality or industry* by local missions or Sunday schools or schools of a charitable nature, and other charitable objects; any one or more of the above objects may be provided for in the constitution and by-laws of such corporation, which shall have power to provide for such necessary expenses as shall accrue by carrying into effect the said object or objects; and no part of the funds of such corporation shall be used for banking purposes or in any manner except as provided in this act."

That this institution is a charity within the designation of statute 43 *Eliz., c.* 4, in the comprehensive sense in which the terms " relief of aged, impotent and poor people" have been construed, is too clear to require discussion or elucidation. The city seeks to justify the imposition of this tax by reason of the methods by which the charity is administered. The land on which the work of the institution is carried on was conveyed to the corporation by Sherman R. Merrill and wife, in 1895, for the nominal consideration of one dollar. There were no buildings on the land at the time of the conveyance. The building in this assessment is valued at $9,000; the building and furniture cost $14,000. The means to erect this building were obtained as follows: Dr. Merrill donated $4,000, about $1,000 was obtained by contributions from other persons, and a mortgage was placed on the property to the Paterson Safe Deposit and Trust Company for $10,000. The entire property of the corporation is used for its charitable work, and for no other purpose.

The institution is the only place in the city of Paterson offering an asylum for aged men, whose physical disabilities are such as to render them unfit for work, and is also an asylum for crippled, deformed and mentally deficient persons unable to contribute to their own support. The methods by which this charitable scheme is carried out are these: The

corporation purchases wood, which is worked up on the premises into kindling-wood, which is sold by the mission in the city of Paterson. The mission is sustained by the profits of the wood-yard and receipts from subscribers. The superintendent describes the method by which this charitable scheme is carried out as follows: "If a person applies at the mission for lodging or meals we set him to cut wood. If he wants a meal we tell him to cut wood for an hour; if he wants lodging we tell him to cut wood for an hour. We take care of a man without reference to how much he does, but compel each man to do something if he can; a great many can't do anything. A man gets hard up, and we keep him until he gets work and his first pay; we charge him, but sometimes he pays us and sometimes he does not. We don't receive anybody who has any money. We take in old men, cripples, &c.—people whose disabilities are such as they are unable to work—and give them the same accommodations as those who are able to work. We give clothing there, cast-off clothing that is given to the mission. If a man comes to us barefooted we give him a pair of shoes; that is, buy them, if nobody sends any shoes in; then he has to stay to work it out. We try to get Paterson people work, but transients we pass along as rapidly as possible. We have preaching every Sunday morning and evangelical services every night in the year."

The mission wood-yard expenses, keeping horses and wagons for peddling the kindling-wood, interest on the mortgage, &c., are paid from the receipts of the wood sales and from the subscribers as a general fund. Whatever profits there are after paying expenses go into the funds of the institution. The treasurer's report shows that for the year ending April 1st, 1899, $2,090 was received from subscriptions; from wood sales, $9,541.55, and payment for meals and lodgings, $184.46. The disbursements show $405, interest paid on the mortgage; cost of wood, $4,834.13; amount paid for provisions and clothing, $2,201.76; salaries, including wages of house help, $2,351.97; mission and wood-yard expenses, $1,811.17. The salaries paid were $1,500 to the superintendent and $624 to

an assistant. The wood-yard expenses were those incurred for keep of horses, freight, &c. The net proceeds realized during the year showed a balance of $11.27.

Exemption from taxation is claimed under the section of the general act concerning taxation, which exempts "all buildings used exclusively for charitable purposes, with the land whereon the same are erected and which may be necessary for the fair enjoyment thereof, and the furniture and personal property used therein." *Gen. Stat., pp.* 3320, 3321. The city claims that the property of the prosecutor is not exempt under the statute, as it is not used exclusively for charitable purposes. The city's claim of the right to impose this taxation is placed upon the fact that it is supported largely by the work of the persons that are fed and lodged at the institution in the profits realized from the sale of the kindling-wood manufactured. This contention is without substance. Where the objects and purposes of the institution are wholly charitable, with no element of private gain, the receipt of compensation from those who enjoy the benefits do not affect its charitable nature. *5 Am. & Eng. Encycl. L.* (2d ed.) 897.

In *Gooch* v. *Association for Relief of Aged Females,* 109 *Mass.* 558, 567, the defendant was incorporated under an act to incorporate associations for the relief of aged indigent females. The funds with which the institution was conducted were derived from voluntary donations, and it had no capital stock or provision for making dividends or profits. The services of the managers were gratuitous. Its special object was to provide a home for aged indigent females, and its funds were to be appropriated to that purpose and incidental expenses. It had erected a house for the purpose, and the board of managers and their appropriate committees were to determine who were fit subjects to receive this charity, what should be done to aid them, and on what terms and conditions and how long they should remain. The contention was that this was not a charity, but that the association merely kept a boarding-house. The court said: "If this be so, it is still true that furnishing board, lodging and nursing to needy persons is

among the most familiar and useful of charities, and that which constitutes such an institution a charity is that it does not furnish these things for profit. The small amount of money and property required to be furnished by those who enter as inmates goes to supplement the charitable fund, and falls far short of being a compensation to the association for what the inmate receives. Hospitals and schools generally require some payment of this kind, but are none the less charities on that account." In a later case the court held that a corporation the object of which is to provide a general hospital for sick and insane persons, having no capital stock nor provisions for making dividends or profits, deriving its funds mainly from public and private charity and holding them in trust with the object of maintaining the hospital, conducting its affairs for the purpose of ministering to the comfort of the sick, without expectation or right on the part of those immediately interested in the association to receive compensation for their own benefit, is a public charitable institution. It was further held that the fact that the corporation by its rules required of its patients payment for their board according to their circumstances and the accommodations they received, no person having individually a right to demand admission, and the trustees of the hospital determining who were to be received, did not render it the less a public charity. *McDonald v. Massachusetts General Hospital,* 120 *Mass.* 432, 435. In *Asylum* v. *Phœnix Bank,* 4 *Conn.* 172, it was held that a corporation having for its sole object the education and instruction of the deaf and dumb, supporting and instructing indigent persons of that class gratuitously, and receiving a pecuniary compensation from pupils of ability to make it, deriving its means of dispensing charity from the donations of individuals and of the public, and apply'ng its funds exclusively to the general object of the institution, was an incorporated school for charitable purposes.

The principle which ruled in the decision of the cases above cited was applied by the Court of Errors and Appeals in a matter of taxation in *Sisters of Charity* v.

*Township of Chatham*, 23 *Vroom* 373.   *Trustees* v. *Paterson*, 32 *Id.* 420, is not pertinent to the situation of the prosecutor.   In that case the buildings of the association consisted of an auditorium, reading-room, library, parlor for games and social intercourse, bowling-alleys, gymnasium and bath-rooms. From these the association received an income of nearly $3,000, and besides that received contributions amounting to $660, which made a surplus of about $200 over its disbursements. The reading-room of the association alone was free.   All the other parts of the building were open to the public at a fixed price, and the auditorium was occasionally rented on terms satisfactory to the trustees.   The tax in that case was sustained on the ground that these buildings were not used exclusively for charitable purposes.   With slight exceptions those who used them were not the subjects of charity, but purchased the right to use them at a price deemed adequate.   In the present case the building is adapted to the association's charitable work and uses, and contains dormitories, bath-room, fumigator or disinfector, kitchen, dining-room and other improvements, including a large meeting-room for religious services.

It is well known that in orphan asylums, hospitals and homes for the aged and infirm in this state compensation, not as an equivalent for the services rendered, is made by some of the inmates and beneficiaries.   But that fact does not detract from the charitable quality of these institutions—the proceeds being applied to the same charitable purposes.

The other ground on which the legality of this assessment is sought to be justified is the payment of salaries to the superintendent and his assistant.   The proof is that these persons give their whole time and services to the management of the institution, and compensation to them, like servants' wages, are expenses incident to the execution of the charitable purpose for which the institution was established and is conducted.   It also appears that in the mortgage made by the mission to the Paterson Safe Deposit and Trust Company, the mortgagor covenanted not to apply for any deduction, by reason of any mortgage, from the taxable value of the lands.

That covenant does not make the institution any the less a charitable association. It is simply nugatory with respect to the taxation from which the association by statute was exempt. The effect of such a covenant in a mortgage on property exempt from taxation is considered in *Angle* v. *Lantz,* 24 *Vroom* 578.

An association established and sustained by voluntary contributions from the charitable, whose object is to furnish food, lodging and clothing to the needy, requiring work in aid of the charity from those who are able to work, discouraging idleness and begging from door to door, with religious services for those who choose to attend, is pre-eminently a charity, and as such is exempt from taxation within the purview of the statute, upon the soundest principles of public policy.

The assessment should be set aside, with costs.