This appeal is from a judgment of the Division of Tax Appeals cancelling the 1946 tax assessment upon the plaintiff's lands, buildings and personal property in the defendant municipality. The plaintiff is a corporation organized under an act to incorporate associations not for pecuniary profit. Exemption is claimed under R.S. 54:4-3.6 which exempts "all buildings actually and exclusively used *Page 73 
in the work of associations and corporations organized exclusively for the moral and mental improvement of men, women and children, or for religious, charitable or hospital purposes, or for one or more of such purposes; * * *." The assessment amounted to $27,100. On appeal, the Bergen County Board of Taxation affirmed the assessment. On appeal to the Division of Tax Appeals it canceled the assessment.
The purpose of the Association is to spread the religious beliefs of the Bible as interpreted by the late Charles T. Russell through the media of pamphlets, study groups and radio broadcasting. In furtherance of its aims, it maintained on the premises in East Rutherford, a printing plant. In the same building it also housed and fed many of its workers, some volunteers, others receiving wages. During the year 1946, the Association published upwards of 100,000 copies of religious pamphlets and 175,000 copies of a monthly magazine called "Dawn." It held 1,681 meetings, attended by over 56,000 persons, none, however, on the East Rutherford property, and during the same year it conducted weekly programs over 60 radio stations. Appellant seeks to reverse the cancellation of the assessment on the ground that the building was not actually and exclusively used for religious purposes. It is said that the operation of printing presses and other equipment may not be considered as a "moral or mental improvement of men, women and children." This argument is specious in view of the fact that the output of the presses and equipment is entirely of a religious nature. It is also said that the plaintiff has failed clearly and convincingly to show that it is not operated for profit because in 1946 it derived profits of $587.57 from the sale of greeting cards and printed matter not printed or published by it, and not of a religious nature. This small item of profit standing alone is insufficient to destroy the essentially religious character of the Association so as to deprive it of the benefit of the exemption statute. The last point raised is that the plaintiff had not sustained the burden of adducing facts bringing it within the terms of the statute in that there is a fair doubt as to whether it was conducted as an association not for pecuniary *Page 74 
profit. This point requires a somewhat extended review of the evidence.
The financial statement of the Association for the year ending September 30, 1946, disclosed total receipts of $75,231.27 and total expenses for the same period of $71,147.84. Among the items of expenses covering the same period is one entitled "Radio $32,080.36." This amount is more than 40% of the total expenditures for that year. Mr. Wassmann, the assistant treasurer of the Association, explained payments of $16,022 to one A.J. Brown as follows: He said that A.J. Brown was someone in their office who took care of radio broadcasting, who was not paid any income, salary or anything else, who was the agent for a broadcasting agent and selected by the broadcasting agent, that she is not a member of the organization as such, that her duties were to see that the monthly payments were made to the radio broadcasting companies, that she paid the money out of her own bank account and that she rendered a statement to the Association showing what was expended. When asked whether that statement was available, his answer was "I'm afraid not." When asked how much was paid to Miss Brown in the year ending September 30, 1946, his answer was "You can't tell, because it is all mixed together, but I know that it was expressly paid to Miss Brown, it was merely turned over to Miss Brown for turning over to someone else." In a nutshell, Association funds were turned over to Miss Brown, deposited in her personal account and, it is said, paid out by her personal check. On cross-examination, it developed that A.J. Brown was Nancy Wassmann, the wife of Felix S. Wassmann, the assistant treasurer of the Association. She stated that she had no particular reason for using her maiden name "Brown," that she did not use it for any other business purpose but just thought it was a business way. Her explanation of this transaction was that a Mr. Gleason in California was interested in the aims of the Association, that he had a radio agency and radio stations, that he wished to see the Association's programs on the air and to donate the commissions to the Association. To accomplish that purpose he authorized A.J. *Page 75 
Brown (Nancy Wassmann) to act as the eastern representative and authorized her to deduct a 15% commission from the amount of the bills for broadcasting and turn over that money to the Association in the form of a donation.
No documentary evidence was introduced to substantiate this arrangement between Gleason and A.J. Brown. Neither was the statement of A.J. Brown produced, although it is said in the evidence that it was available, nor were her bank accounts or canceled checks produced. No explanation was given for the failure to do so. We are asked to accept this unusual procedure on the mere statement of Mrs. Wassmann and a Mr. Woodworth, a trustee and secretary of the Association.
In Trenton v. State Board of Tax Appeals, 127 N.J.L. 105
(Sup. Ct. 1941), Mr. Justice Perskie reviewed the applicable legal principles and said: "Since statutes granting exemption from taxation are in the nature of a `renunciation of sovereignty,' * * * they are most `strongly construed' against those claiming exemption. Thus the facts and circumstances in each case must clearly and convincingly establish the right to exemption within the statute granting exemption, otherwise the general rule is invoked which subjects `all property to a just share of the public burdens.' * * * Otherwise stated, the proofs must be `free from fair doubt.' The burden of proof is upon the claimant to establish the asserted right to exemption." (Citing cases.)
The unorthodox and unsatisfactorily explained method of turning over Association funds to A.J. Brown, the depositing of those funds in her personal account and the payment of the Association's bills for radio broadcasting amounting to more than 40% of the total expenses in the tax year under review, the non-production of any statement of the financial transactions as between the Association, Brown and Gleason, which statement was concededly available, and the absence of any other documentary proof raises a real doubt on the decisive question of whether or not the Association was conducted for pecuniary profit.
The judgment under review is reversed. *Page 76