BRENNAN, J.T.C.
This is the court’s opinion in connection with the plaintiffs appeal of the defendant’s Assessment Revision dated March 7, 2011 in which the property owned and operated by plaintiff and known as “Holiday House” was denied exemption from local property taxes pursuant to N.J.S.A. 54:4-3.6. Plaintiff argues that the property serves as an integral part of the operation of its religious and charitable nonprofit organization and use of the residence is reasonably necessary for its proper and efficient operation.
The court finds that plaintiff has met its burden of proof and has established by clear and convincing evidence that it is a nonprofit organization whose use of the property in question is in furtherance of its stated charitable and religious purposes and that *553 the actual use of the property by the plaintiff is predominant and reasonably necessary to effectuate the purposes and functions of the organization.

I. FACTUAL FINDINGS

A. THE GIRLS FRIENDLY SOCIETY OF PENNSYLVANIA

Plaintiff Girls Friendly Society of Pennsylvania (“GFSPA”) is a nonprofit corporation of the Commonwealth of Pennsylvania. GFSPA is part of an international organization that has been in existence for over one hundred years and that strives to foster fellowship among young girls and women under the guidance and tutelage of the Episcopal Church.
The history of the organization has its roots in England. The first Girls’ Friendly Society was founded in 1875. During that time, girls between the ages of eleven and fourteen from poor families were often sent to work in industry or as servants in wealthy houses. The Girls’ Friendly Society was formed to offer Christian fellowship to young female mill workers who were separated from their families.
Two years later, a rector’s daughter from Massachusetts organized the first American branch to provide comfort and support to girls who were forced to leave home to find employment. As the organization grew in the late 1800’s, the Girls’ Friendly Society became involved in assisting women immigrating to this country by providing housing and helping them secure employment. GFSPA was established in 1881 and in 1896 the organization decided to purchase a boarding house for women in Cape May City, New Jersey. This property in Cape May eventually became known as Holiday House.
By 1942, GFSPA was providing “health and recreational facilities for women and girls under the guidance of the Protestant Episcopal Church.” At that time, the Holiday House building was utilized as a summer boarding home for girls and women, some of whom were accommodated free of charge due to their inability to *554 pay, as well as boarding for regular members of the Girls’ Friendly Society who were in a position to pay.[1]
Over time, GFSPA has had to adapt to the changes in women’s roles in this country as well as to the evolving challenges of modern day society. GFSPA has continuously reinvented itself to grow with the current state of girls and women’s needs and to comport with transformations in the Episcopal Church as it strives to maintain its relevance in contemporary times. Currently the GFSPA is comprised of numerous small local chapters associated with various churches located within the Episcopalian Diocese of Pennsylvania.
In an effort to modernize the evolving nature and purpose of the organization, Paragraph 2 of GFSPA’s Articles of Incorporation was amended in 2009 to state:
2. The purpose for which the corporation is formed are as follows:
a. To bind together in one Society, women, communicants, of the Protestant Episcopal Church in the United States of America, as Associates of said Society, and girls and young women as Members for mutual help (religious and secular) sympathy and prayer; such Associates and Members being admitted, according to the by-laws of the Society.
b. To encourage purity of life, dutifulness to parents, faithfulness to employers and thrift.
c. To provide the privileges of the Society for its members wherever they may be, by giving them an introduction from one branch to another.
d. To act in affiliation with the Girls Friendly Society in America, a corporation chartered under the laws of the District of Columbia.
The corporation is organized exclusively for religious and charitable purposes within the meaning of section 501(c)(3) of the Internal Revenue Code.
The stated purpose of the organization in the bylaws is to provide a program for girls within the Episcopal Church whose members accept the Christian faith and seek in the fellowship of worship, study, work and play to serve God and extend his kingdom. *555 Membership is open to all girls of any race or religious persuasion between the ages of five through twenty-one and young women and former members who are referred to as Advisors, Leaders and Sponsors.

B. HOLIDAY HOUSE

In the early 1900’s the Girls’ Friendly Society had twenty-one “Holiday Houses” and fourteen lodges in multiple states. Over time, due to economic circumstance and misfortune, they foundered and the GFSPA Holiday House is currently the last one remaining in the United States. The property located in the historic seashore community of Cape May, New Jersey, is approximately two blocks from the beach and around the corner from the local Episcopal Church. It is available for use by Girls’ Friendly Society members nationally, although it is predominately used by members from Pennsylvania, New Jersey and Connecticut.
The current Holiday House location[2] is known as Block 1066 Lots 4 and 17 on the tax map of Cape May City in Cape May County (“Municipality”). The combined property value assessment for both lots in 2011 was $2,023,600.
Holiday House is a 4,400-square-foot, three-story Christian retreat house that has been designated a key historic property. It has largely remained internally and externally unchanged, absent wear and tear and maintenance, since its purchase in 1930. Holiday House does not have heat or air conditioning and is only open from May through September. The building consists of approximately 35 rooms that can accommodate 50 guests. None of the bedrooms have locks or private bathrooms, although each floor has a community bathroom. The common areas of the building include a living room, a parlor, a chapel with an organ, a *556 large dining room that can seat sixty guests, a commercial kitchen, and three porches. Guests are provided with one to two meals per day. There is no television or internet. Due to the age of the building and the exposure to the elements in a shore town, Holiday House has increasingly been very expensive to maintain.
At trial, the President of GFSPA, Angeline Myshko, testified that the accommodations are quite sparse and that all of the furniture in the Holiday House was donated. Mrs. Myshko acts as the full-time manager of the Holiday House and as such she oversees all day-to-day operations. In addition, Holiday House is staffed full-time by an Assistant Manager, a Cook, and an Assistant Cook. All positions with exception of the Cook are comprised of GFSPA members who accept a reduced salary/wage in exchange for room and board. The salaries paid are minimal.[3] Additionally, and perhaps most importantly, there is a part-time service staff comprised of GFSPA teenagers aged fourteen to eighteen,[4] which by virtue of this employment opportunity are learning about service, community, team work and responsibility. The operation of Holiday House also relies quite heavily on volunteer staff from the Christian community with which they are affiliated to provide maintenance and additional seasonal and periodic housekeeping responsibilities. These individuals, known as “working associates,” provide services for various periods of time (hours, days, weekends, weeks) and are utilized based upon availability. The volunteers are required to participate in proper “Safe Church Training” and they receive room and board in exchange for service to Holiday House.
Article II of the Bylaws for Holiday House establishes the purpose of the property and it reads:
*557 The purpose of the Holiday House, owned solely by and operated by the Girls Friendly Society in the Diocese of Pennsylvania incorporated in the State of New Jersey, as a seasonal (summer) vacation house offering a structured program encompassing the four (4) phases of the Girls Friendly Society; worship, study, sendee and recreation for its members, former members and friends. The corporation shall have unlimited powers to engage in and do any lawful act concerning any and all activity for which nonprofit corporations may be incorporated under New Jersey Nonprofit Corporation Law.
Holiday House is occupied seasonally from May until September. During the initial weeks, the majority of those in residence are GFSPA adult members who help prepare the house for the summer season. Thereafter, two weeks in the season are dedicated to Girls’ Friendly Society clubs in Pennsylvania, New Jersey and Connecticut in order to provide a one-week retreat for girls ages eight through thirteen. These retreats are an opportunity for all of the young girls from the various Girls’ Friendly Society local groups to join together in fellowship, worship and community service.[5] An additional two weeks are designated for use by the adult Girls’ Friendly Society members to advance the local and national purposes of the organization and to plan for the year ahead.[6]
For the remainder of the summer weeks, the Holiday House is intermittently partially and fully occupied by select individuals and groups who pay a fee for a room and meals and who are known to GFSPA, either through the GFSPA organization or through the Episcopal Church.[7] All of the GFSPA witnesses adamantly testified, repeatedly and credibly, that the facility is not open to the general public and occupants are only permitted by referral. *558 GFSPA allows these individual and groups to use the Holiday House for two purposes: first it provides an employment opportunity for the GFSPA teenagers (ages 14 to 18); and second the fees (referred to by GFSPA as donations) offset the cost of food, utilities and other operating expenses.[8] GFSPA contends that the Holiday House could not function without these rental donations.
This supplemental occupancy of the Holiday House by non-GFSPA individuals and groups is necessary to advance the educational goal and purpose of GFSPA in providing the GFSPA teenage girls with an initiation to employment wherein they are taught the value of working, safety in the kitchen, and independence and responsibility within the safe, spiritually structured and closely supervised environment of GFSPA This unique opportunity allows as many girls who are qualified and want to work to have the opportunity to do so, even if it is only for one or two weeks. The opportunity and ability to work at the Holiday House as a service staff member provides multiple benefits not readily available elsewhere for these teenage girls including a foundational reference for future employment.

C. APPLICATION FOR TAX EXEMPTION

In April 2010, GFSPA filed an application for a tax exemption for tax year 2011 pursuant to N.J.S.A. 54:4-3.6. The application states that the property is not rented[9] and that it is used exclusively for its stated purpose, which is described in the application as follows:
The Girls Friendly Society in the Diocese of Pennsylvania has Federal Tax Exempt Status under Section 501(c)(3). The purpose of the Holiday House: for which the exemption from real estate taxes is sought is that it operates as a summer retreat house for members of the Girls Friendly Society, former members, and other Christian groups.
*559 The Girls Friendly Society is a non-denominational, international, nonprofit organization affiliated with the Episcopal Church. It is for young girls and women. The Girls Friendly Society is a support system for girls between the ages of seven and 21 of any religion, race, or nationality. The goal is to help them to mature into productive, healthy adulthood through an agenda focused on worship, service to others, study and recreation. The Girls Friendly Society helps its members to develop their talents and skills and to gain self-esteem needed in today’s complex adult world.
Based upon only this application, on November 29, 2010 the Tax Assessor for the Municipality granted the exemption effective June 1, 2011. Thereafter on March 7, 2011, the Cape May County Board of Taxation revised the assessment and denied the exemption.[10] On March 29, 2011 GFSPA filed this appeal.
The Municipality acknowledges that GFSPA itself qualifies as a nonprofit organization subject to exempt status pursuant to N.J.S.A. 54:4-36. However, the Municipality argues that the use of the property is non-exempt because the predominant purpose of the Holiday House is to give the members, their guests and nonmembers a summer vacation at the shore.[11]
The Cape May Tax Assessor testified as to the visual appearance of the Holiday House. He without question or hesitation *560 testified that from the outside, it appears to be a retreat house, unpretentious, simple and peaceful. The confusion, however, revolves around advertisements and website information being generated by GFSPA. The advertisements and website give the impression that the Holiday House is not just a retreat house but rather a very affordable bed and breakfast open to the general public.
According to testimony elicited at trial, in 2007 GFSPA began an advertising campaign to attract persons and organizations to rent rooms at the Holiday House during the weeks the young girls and adult Girls Friendly Society members were not in residence. To this end, an internet website “http://gfspaholidayhouse.org'” was created. The website identifies the Holiday House as a “Christian Retreat House” open from Memorial Day to Labor Day with single, double and triple occupancy rooms for individuals, families, and Christian affiliated organizations. The site has a “Home” page, an “About Us” section, a “Contact Us” section and a “Services” section. The “Services” section is essentially a rental section with “Specials” identifying rates and reservation instructions. In the Services section it is not explicitly stated that the Holiday House is not open to the public; the inference being that anyone can stay at this “bed and breakfast” for lower than market rates based only upon availability.
The Services section of the website indicates that the Holiday House is funded solely by donations. It states:
The cost of keeping our beloved Holiday House open for future generations is increasing each year.
A small group of women of faith, family members, and friends of Holiday House work to maintain the property, underwrite the costs associated with running our summer program for girls, and keeping our business and social obligations to our neighbors on Hughes Street and the community of Cape May.
Much of the summer is dedicated to groups of GFS girls and friends spending a one week vacation/retreat. For most of the girls, it is the only opportunity they have to enjoy the shore, build on their faith, and experience the fellowship for which Holiday House is best known.
The donations we receive from others staying at the House during the season aren’t enough to cover expenses. We rely on fund raising events and private donations to make up the difference.
*561 This year we are asking for help by encouraging anyone who has stayed at the House, has a family member in GFS or simply wants to become a “Friend of Holiday House” to donate what they can. Any contribution is welcome!
The website, therefore, uses both the term “rates” and the term “donations” when referencing payments made by those who use the Holiday House.
In addition to the website, the advertisement/informational materials distributed by GFSPA greatly contribute to the perception that the Holiday House is a vacation destination. In one GFSPA publication, the left-hand side of the page discusses a service on evening prayer, while on the right-hand side a passage reads:
Leaders and parents brought young members from all of [sic] the Delaware Valley! The day allowed another great opportunity for our GFS families to enjoy the House, linger along the beach, and take advantage of the season’s end sales on Washington Street Mall!
Another flyer has the heading “Don’t Let The Cost Of Gas Cost You a Vacation!” This advertisement states that the Holiday House is a Christian Retreat Home that welcomes individuals, families, groups, vestry and choirs with affordable accommodations. It invites users to “enjoy a great vacation of fun and sun on our beautiful Cape May Beach. Stroll the quaint Washington Street Mall .... and dine in one of the many pubs and fine dining restaurants throughout the town!” Another flyer has the heading “Stay in Cape May this July 4th!” and indicates that you can stay at the Holiday House this year for only $150 for three nights and four days. It further indicates that the Holiday House is only “two blocks from the beach, movie theatre, Washington Street Mall, horse and buggy rides, trolley car tours ... and so much more!”
The January 2011 GFSPA newsletter makes reference to looking forward to “warmth, friendship, hard work, and laughter at Holiday House. See you at the Beach!” The same publication, however, explained that the last effort to raise funds was facilitated during the summer season at Holiday House with a campaign theme of “Fill the Bucket” and sales from “Sponsors Corner.” The newsletter also mentions a book sale at the Holiday House and growth in the training program for Holiday House staff.
*562 On the other hand, internal documentation from GFSPA members who use the Holiday House during designated “girls weeks” in the summer characterizes the use of the property as being for the stated charitable purposes. A recent note from the Girls’ Friendly Society of New Jersey President closes with the statement:
Our girls and leaders will be coming to Holiday House in July with a total of 29 girls and 10 leaders. We look forward to and plan all year for our week in Cape May to be spent in fellowship, worship, charity work, and of course beach time, shopping and fun!
The Holiday House also has a chaplain in residence, whose role is to facilitate prayer, give communion and actively participate in the young girls program. While the chaplain is not available at the Holiday House full-time, when present she is accessible to all in need of spiritual guidance and support. This is true not only with the GFSPA users but she is also available to the various church groups and religious choirs who stay at Holiday House. Chaplain Colton testified as to the truly spiritual and religious nature of the Holiday House and its occupants throughout the summer, whether by virtue of grace at meals, reflective worship in the chapel, or the singing of religious songs by the various choirs.

II. LEGAL ANALYSIS

The factual and legal issues presented concern N.J.S.A. 54:4— 3.6, which governs exemption of property of nonprofit organizations.[12] Exempt from taxation are “all buildings actually used in the work of associations and corporations organized exclusively for the moral and mental improvement of men, women and children” and “all buildings actually used in the work of associations and corporations organized exclusively for religious purposes, includ *563 ing religious worship, or charitable purposes.” N.J.S.A. 54:4-3.6. The land that an otherwise exempt building is located on may not exceed five acres. Ibid.
If a portion of a tax exempt building is used for a non-exempt purpose, then that specific portion is subject to taxation and the rest of the building remains exempt. Ibid.
Additionally, “if any portion of a building is used for a different exempt use by an exempt entity, that portion shall also be exempt from taxation ... provided, in case of all the foregoing, the buildings, or the lands on which they stand, or the associations, corporations or institutions using and occupying ... are not conducted for profit, except that the exemption ... shall extend to cases where the charitable, benevolent or religious work therein carried on is supported partly by fees and charges received from or on behalf of beneficiaries using or occupying the buildings; provided the building is wholly controlled by and the entire income therefrom is used for said charitable, benevolent or religious purposes.” Ibid.
The Supreme Court has noted:
Judicial interpretation of statutory tax exemptions is governed by principles of general statutory construction. Thus when interpreting a statutory tax exemption, the Legislature’s intent is the paramount goal ... and, generally, the best indicator of that intent is the statutory language.
[Township of Holmdel v. New Jersey Highway Auth., 190 N.J. 74, 87, 918 A.2d 603 (2007) (citation omitted).]
Tax-exemption statutes are strictly construed against those claiming exemption because of the compelling public policy that all property bear its fair share of the burden of taxation. Princeton Univ. Press v. Borough of Princeton, 35 N.J. 209, 214, 172 A.2d 420 (1961). However, strict construction does not require “a rigid scholastic interpretation____The rule of strict construction must never be allowed to defeat the evident legislative design.” Boys' Club of Clifton, Inc. v. Township of Jefferson, 72 N.J. 389, 398, 371 A.2d 22 (1977) (quoting Township of Princeton v. Tenacre Found., 69 N.J.Super. 559, 563, 174 A.2d 601 (App.Div. 1961)). Nonetheless, taxation is the rule and the claimant bears the burden of proving an exemption. New Jersey Carpenters *564 Apprentice Training & Educ. Fund v. Borough of Kenilworth, 147 N.J. 171, 178, 685 A.2d 1309 (1996), cert. denied, 520 U.S. 1241, 117 S.Ct. 1845, 137 L.Ed.2d 1048 (1997).
The “legislative design” of the statute has been long recognized as “[a] concession ... due as quid pro quo for the performance of a service essentially public, and which the State is hereby relieved ... from the necessity of performing.” Society of Holy Child Jesus d/b/a Oak Knoll Sch. v. City of Summit, 418 N.J.Super. 365, 373,13 A.3d 886 (App.Div.2011), (citing Carteret Acad. v. State Bd. of Taxes & Assessment, 102 N.J.L. 525, 528, 133 A. 886 (Sup.Ct. 1926), aff'd, 104 N.J.L. 165, 138 A. 919 (E. & A.1927)). The Supreme Court has also noted that “[t]he exemption is granted by the State because of the contribution of the exempt facility to the public good.” Roman Catholic Diocese of Newark v. Borough of Ho-Ho-Kus, 42 N.J. 556, 566, 202 A.2d 161 (1964).
The test for exemption from taxation of property of educational, religious and charitable organizations not conducted for profit is that the institution must appear from all facts presented to be operated for objects which are fundamentally charitable or philanthropic, and the right to the exemption depends upon the circumstances of each particular case. College of Paterson v. City of Paterson, 21 N.J. Misc. 13, 14-15, 29 A.2d 402 (State Bd., Tax Appeals 1942).
GFSPA, while clearly having a religious foundation as a result of its affiliation with the Episcopal Church, is truly a hybrid organization that also seeks to attend to the moral and mental improvement of the girls and women that it serves. The land upon which Holiday House is located is less than five acres and thus satisfies the maximum land requirement of N.J.S.A. 54:4-3.6.[13] Therefore, in order to secure an exemption for its real property, GFSPA must demonstrate that it meets the following three criteria:
(1) It must be organized exclusively for its exempt purpose;
*565 (2) The property must be actually used for the tax-exempt purpose; [14] and
(3) The operation and use of the property must not be conducted for profit.
See Hunterdon Med. Ctr., supra note 14, 22 N.J.Tax at 315 (citing Paper Mill Playhouse, supra note 14, 95 N.J. at 506, 472 A.2d 517). The Paper Mill standard has been specifically applied to religious organizations. Hunterdon Med. Ctr. v. Township of Readington, 195 N.J. 549, 560, 951 A.2d 931 (2008) (citing Roman Catholic Archdiocese of Newark v. City of E. Orange, 18 N.J.Tax 649, 653 (App.Div.2000)).
The first prong of the test is satisfied because the court finds as fact that GFSPA is organized exclusively for an exempt purpose within the meaning of N.J.S.A. 54:4-3.6. The court specifically finds that the services provided by GFSPA help improve the quality of life in society and provide a direct benefit of moral and mental improvement to the girls, their families and to future employers.
The second prong requires that the court determine whether the actual use of the Holiday House by GFSPA assists in achieving the stated tax-exempt purpose of GFSPA. In reviewing the stated purpose as set forth in the Articles of Incorporation, the court finds that the actual and predominant use of the property by GFSPA is reasonably necessary for the attainment of this purpose. The Holiday House is the venue where multiple smaller local groups are brought together to grow and learn from the GFSPA leadership and its adult members and this place of gathering binds its members in ways that encourage mutual help, sympathy and prayer. The house provides an experience to both the young girls and the employed teenage girls where purity of life is encouraged, dutifulness to parents is expected, faithfulness to employers is taught and valued, and thrift is a part of every day *566 life. The court also finds that due to the ages of the members and the various locations of their individual groups, the Holiday House structure as a retreat house is logistieally necessary to accommodate the number of girls involved and fulfill the GFSPA mission.[15] The house is the place where all of the girls under age eighteen have the opportunity to interact with other Girls’ Friendly Society members both within their own age group and with those of older generations.
Property is actually used for a tax-exempt purpose if it is “reasonably necessary” in order to accomplish the organization’s purpose. City of Long Branch v. Monmouth Med. Ctr., 138 N.J.Super. 524, 532, 351 A.2d 756 (App.Div.1976), aff'd o.b., 73 N.J. 179, 373 A.2d 651 (1977); accord Boys’ Club of Clifton, supra, 72 N.J. at 401, 371 A.2d 22. In applying this test, the Court has held that “necessary” is not the same as “absolutely indispensable.” Boys’ Club of Clifton, supra, 72 N.J. at 401, 371 A.2d 22. When determining whether a building is reasonably necessary for the tax-exempt purpose, the use of the building should be evaluated in terms of how it serves the particular organization. Id. at 401-402, 371 A.2d 22. Thus the “eating, sleeping, and medical quarters, as well as the surrounding land [of a boys’ camp], are all integrated components necessary for the proper operation of the camp.” Ibid. Likewise, a medical center that provided housing for hospital personnel could claim the property tax exemption for staff housing facilities because the buildings enabled the hospital to recruit qualified personnel and to house them in close proximity to the hospital, all of which allowed the medical center to “function properly and efficiently.” City of Long Branch, supra 138 N.J.Super. at 533, 351 A.2d 756.
Since the City of Long Branch decision, courts have been more willing to consider uses that are complementary to or consistent with charitable or religious purposes. For example, in St. Ann’s Catholic Church v. Borough of Hampton, the Tax Court concluded *567 that the then existing requirements of “actual and exclusive” use of property cannot be interpreted literally. 14 N.J.Tax 88, 99 (Tax 1994). In applying the reasonably necessary test in the context of a residence, the court in St. Ann’s Catholic Church directed that the exemption claimant must demonstrate a compelling need for the services performed by the resident of the property for which the exemption is claimed and prove that the services are integrated with the exempt functions of the entity. Id. at 100.
Direct proof of an individual’s mental or moral improvement is not necessary for an entity to qualify for an exemption. International Sch. Services, Inc. v. Township of West Windsor, 412 N.J.Super. 511, 525, 991 A.2d 848 (App.Div.2010), aff'd, 207 N.J. 3, 21 A.3d 1166 (2011). Additionally, that the services provided by GFSPA at Holiday House are not available to the general public is not fatal to its qualification on actual use. Princeton Univ. Press, supra, 35 N.J. at 216, 172 A.2d 420. In Princeton University Press, the purposes of the nonprofit Press were “in the interests of Princeton University, to establish, maintain and operate a printing and publishing plant, for the promotion of education and scholarship,” and its services included operating a printing plant, publishing a periodical that reported on alumni and assisted University fundraising, and selecting, printing and distributing scholarly works. Id. at 211-212, 172 A.2d 420. Our Supreme Court found these services served the mental and moral improvement of men, women and children and “served a valuable public service.” Id. at 216, 172 A.2d 420.[16]
GFSPA activities at Holiday House advance the mission of GFSPA by providing various levels of support to its members. The younger girls in particular receive Christian guidance and instruction, are able to develop relationships between peers and elders of the organization, and participate in community projects in Cape May. Holiday House also provides short-term employment *568 opportunities for young teens in a safe, supervised, structured Christian environment and the house also serves as a meeting facility for both the local and national chapter of the organization.
Multiple factors must be taken into consideration when making the determination as to an organization’s status to qualify for a tax exemption, including but not limited to the organization’s social services activities and source of funding. The determination of whether or not property is being used for a purpose that qualifies for a tax exemption depends on the facts and circumstances of each case; there is no precise definition of what constitutes an exempt activity. Community Access Unlimited Inc. v. City of Elizabeth, 21 N.J.Tax 604, 613 (Tax 2003).
A taxpayer’s qualification as a nonprofit charitable organization is not, in and of itself, enough to qualify the taxpayer for property tax exemption. Essex Properties Urban Renewal Associates, Inc. v. City of Newark, 20 N.J.Tax 360, 368 (Tax 2002). N.J.S.A. 54:4-3.6 clearly contemplates that associations and corporations organized exclusively for religious and charitable purposes are exempt from real property taxation only when actually used in the work of the associations and corporations. Boys’ Club of Clifton, Inc., supra, 72 N.J. at 399, 371 A.2d 22; see also Princeton Univ. Press, supra, 35 N.J. at 216-217, 172 A.2d 420.
Property is actually and exclusively used in the work of an association or corporation if the property is reasonably necessary for one of the purposes enumerated in N.J.S.A. 54:3-6. City of Long Branch, supra, 138 N.J.Super. at 532, 351 A.2d 756.
Based upon the facts and evidence produced at trial, this court finds that GFSPA has satisfied the second prong of the three-part test in that Holiday House is reasonably necessary for the advancement of the tax exempt use of GFSPA and that it is actually used for that purpose.
The third prong requires that the court look into the use by non-GFSPA occupants and determine whether their use of the property substantially detracts from the actual use of the property in furtherance of the GFSPA purpose. The court finds that it *569 does not and that the predominant use of the house is for the advancement of GFSPA.
Initially, this court finds that GFSPA’s rental of rooms to restricted users who were affiliated with religious groups and choirs in the Episcopalian Church and to individual GFSPA members and their families was not conducted for profit and did not result in profit. There is no evidence of excessive salaries and, in fact, the evidence in the record is that all salaries were minimal.[17] The actual use of the house served the purpose of creating work for teenage girls in a safe and supervised environment and allowed for short-term non-school year employment. The court has no doubt that the GFSPA thoroughly screened all occupants of the Holiday House and only accepted groups and/or individuals based upon solid referrals, if for no other reason than that no locks were on any of the doors. The rates/donations charged do not indicate any effort on GFSPA’s part to pursue profit and both the maintenance of Holiday House and its sparse and simple accommodations show GFSPA’s continued interest in preserving and emphasizing the Christian environment and spiritual setting that the members continue to attempt to achieve. The lack of modern conveniences such as air conditioning, television and the internet demonstrate to this court clearly and most convincingly that GFSPA is not attempting to provide a vacation destination to the general public at lower than market rates.
Unfortunately, a well intentioned but misguided effort to assist in the financial welfare of Holiday House led to public perception of a non-exempt use. The Municipality was correct in questioning the use of the property given the advertisements and website materials distributed by GFSPA over the last few years. Ultimately, though, it is actual use and not advertised or perceived use that is the test for whether a property is tax exempt under N.J.S.A. 54:4-3.6.
*570 The Municipality claims that the evidence submitted by GFSPA does not establish the facts necessary to meet its burden of proof by clear and convincing evidence and argues that although the statute was amended in 2001 to eliminate the requirement of “exclusivity,” the purpose of the amendment was not to preserve an exemption for a property when use of such property has been apportioned in time between exempt and non-exempt uses.
The court disagrees with the municipality’s analysis and finds that the facts of this case are more similar to the eases in which exemption has been granted despite the obtainment of income to assist in offsetting the cost associated with keeping the property. For example, a profit of $587.57 raised by a Bible students’ association from the sale of non-religious greeting cards and other printed matter did not destroy the essentially religious character of the association and thus did not deprive the association of the benefit of tax exemption for its buildings and personal property actually and exclusively used in the work of the nonprofit association’s organized-for religious purposes. Dawn Bible Students Ass’n v. Borough of E. Rutherford, 3 N.J.Super. 71, 73, 65 A.2d 532 (App.Div.1949). Recognition of such exceptions would appear to be much more in accord with the history and tradition that surround the power of exemption.
As our Supreme Court has instructed, “[w]ell-established principles of statutory construction direct us to look first to the statute’s plain language to derive its meaning, absent any specific indication of legislative intent to the contrary.” Town of Morristown v. Woman’s Club of Morristown, 124 N.J. 605, 610, 592 A.2d 216 (1991) (citing Kimmelman v. Henkels & McCoy, Inc., 108 N.J. 123, 128, 527 A.2d 1368 (1987)); Mortimer v. Bd. of Review, 99 N.J. 393, 398, 493 A.2d 1 (1985). Moreover, to the extent that the court strives to determine the legislative intent of any statute it does not “only look to the language of the statute, but to the policy underlying the statute, concepts of reasonableness, and legislative history, if any.” McQueen v. Brown, 342 N.J.Super. 120, 131, 775 A.2d 748 (App.Div.2001), aff'd, 175 N.J. 200, 814 A.2d 1042 (2002) (citing Coletti v. Union Cnty. Bd. of Freeholders, 217 N.J.Super. 31, 35, 524 A.2d 1270 (App.Div.1987)).
*571 N.J.S.A. 54:4-3.6 is clear that an otherwise “charitable, benevolent, or religious” use does not become a nonqualifying for-profit use if the charitable, benevolent, or religious use “is supported partly by fees and charges received from or on behalf of beneficiaries using or occupying the buildings ... provided, the building is wholly controlled by and the entire income therefrom is used for said charitable, benevolent, or religious purposes____” Therefore, GFSPA’s charitable purpose cannot be questioned on the sole basis that some revenue is derived from selective groups and individuals on a fee for service basis.[18]
In Walter Reade, Inc. v. Township of Dennis, the properties of the Highway Authority, which constructed and operates the Garden State Parkway with service areas containing restaurants, and the operators of those restaurants were assessed for local property taxes. 36 N.J. 435, 437, 177 A.2d 752 (1962). On its appeal the Authority’s property was held exempt under N.J.SA 27:12B-16 from local property taxes on any project or property used to “benefit the people of the State, for the increase of their commerce and prosperity, and for the improvement of their health and living conditions____” Id. at 438, 177 A.2d 752 (quoting N.J.S.A 27:12B-16). The Authority’s property was held entitled to the exemption because the restaurants were clearly within the Authority’s purposes as contemplated in the act creating it, and remained so notwithstanding a lease to a private operator. Walter Reade, Inc., supra, 36 N.J. at 439, 177 A.2d 752 (although it is noted in that case that tax exemptions in favor of nongovernmental owners *572 are strictly construed in the sense that an exemption will not be extended beyond the ascertainable intention of the Legislature, while exemptions in favor of governmental agencies should be liberally construed).
The Municipality points to the holding in Borough of Harvey Cedars v. Sisters of Charity of St. Elizabeth whereby the Appellate Division found that certain properties owned by nuns were not tax exempt because they were located remotely from the place of actual work and were not reasonably necessary to achieve the charitable and religious purposes of the convent. 163 N.J. Super. 564, 568-569, 395 A.2d 518 (App.Div.1978). In that case, the property was a vacation/retreat facility and the roles of the occupants were found to be different from their usual roles away from the property. Id. at 567-569, 395 A.2d 518. The direct activities of the organization within the framework of its objectives were not conducted on premises; the facility was for the rest and relaxation of - sisters and clergy during the summer; and the facilities were utilized for both religious retreats and vacation. Id. at 566, 395 A.2d 518. Residences for personnel or religious organizations at a great distance from their place of work and not necessary for the accomplishment of the purposes of the charity are not entitled to tax exemption. Id. at 569, 395 A.2d 518. The facts and circumstances of this ease are distinguishable from Borough of Harvey Cedars and lead the court to the conclusion that Holiday House is exempt from local property taxation because it is the central location that pulls together and facilitates all of the stated purposes, religious and charitable, of GFSPA.
The receipt of fees on behalf of the charitable beneficiaries does not destroy the otherwise charitable purpose. The entitlement of exemption depends upon the “circumstances, charges and public betterment.” Church Contribution Trust v. Mendham Borough, 9 N.J.Tax 299, 313-314 (Tax 1987), aff'd as modif, 224 N.J.Super. 643, 646, 541 A.2d 249 (App.Div.1988).
There is no dispute about the “public betterment” produced by GFSPA activities and in the court’s opinion the “circumstances” and “charges” do not affect the property’s tax exempt status. *573 While it is true that the income provided by the various religious groups, choirs and individuals provides support for the upkeep of the building, Holiday House is not simply a “vacation house” for the GFSPA members.
N.J.S.A. 54:4-3.6 requires that an entity claiming exemption not be conducted for profit and that the property for which exemption is claimed not be operated for profit. Nothing in the record suggests that Holiday House is operated for profit; in fact all evidence is to the contrary. The revenues received for rooms and meals at Holiday House are utilized for operating expenses, including compensation for the teenage girls who work there during the summer months. No evidence exists to suggest that the income was used for any purpose other than to offset the cost of providing accommodations and meals to the guests and members.
This court concludes that the facts of this ease are more in alignment with those presented in Boys’ Club of Clifton. There, the fact that a nonprofit organization’s camp was used in the off-season by church groups and college students did not destroy the nonprofit organization’s right to exemption.[19] Boys’ Club of Clifton, supra, 72 N.J. at 399-400, 371 A.2d 22.
*574 The pre-amended statute discussed in Boys’ Club of Clifton, supra, required that the buildings be exclusively used in the work of the organization. 72 N.J. at 399, 371 A.2d 22. In that case, the Court stated “exclusive use does not necessarily contemplate occupancy by only the eleemosynary, religious or other qualified institution which owns the property. The statute preserves the exemption even though there may be occupancy by another charitable or religious organization that rents the premises.” Ibid. The Supreme Court thus held that off-season use of the facilities and area by other nonprofit groups did not destroy the Boys’ Club’s right to an exemption. Ibid. Although the Boys’ Club permitted college students and overnight skiers to use their premises (see n. 19), the Court held that those incidents were non-recurring and de minimus and did not impair the tax exempt status of the Boys’ Club. Ibid.

III. CONCLUSION

This court holds: (1) that the Girls Friendly Society of Pennsylvania is organized exclusively for religious and charitable purposes combined with the moral and mental improvement of young gilds and women, that Holiday House is a Christian retreat house owned by GFSPA, and that GFSPA is a nonprofit corporation whose status satisfies the requirements of N.J.S.A. 54:4-3.6; (2) that Holiday House is in fact actually used for its charitable purposes; (3) that Holiday House is devoted to the same or similar purposes of GFSPA, that Holiday House sits upon less than five acres of land, and that the land and building usage are reasonably necessary for the purposes and functions of GFSPA; and (4) that GFSPA’s operation of the Holiday House is not conducted for profit and any generated income is applied to the organization’s commendable objectives, thereby entitling Holiday House to exemption from local property taxes in accordance with N.J.S.A. 54:4-3.6.

 In 1942, although use of the Holiday House was deemed to be for charitable purposes, the property was not entitled to exemption from taxes because it was not used “exclusively” for its stated charitable purpose. GFSPA allowed its facility to be available to persons who were not its members at rates in excess of those charged to members and, in addition, permitted others to conduct activities in the building. See Girls Friendly Soc’y of Pa. v. City of Cape May, 20 N.J.Misc. 65, 24 A.2d 410 (State Bd., Tax Appeals 1942).

 GFSPA's first Holiday House (Alcott House) was purchased in 1896 and was located on 615 Hughes Street in Cape May City. A fire destroyed this building in 1910. At the time of the fire, the property located at 644 Hughes Street (Baltimore House circa 1867) was being used as a retreat house by The Society of St. Margaret, an Episcopal Religious Order from the Germantown section of Philadelphia. GFSPA began using this house in 1910 and eventually purchased the property for its use as a Holiday House in 1930.

 For example, in 2009 the weekly salary rates were $250 a week for Managers, $75 a week for Assistant Cooks and Cleaning Persons, and $35 a week for Service Staff. Staff (not including Service staff) is required to work 6 days a week.

 In 2010 eighteen GFSPA teenagers worked for periods of one week to eight weeks during the summer; in 2011 seventeen GFSPA teenagers worked for periods of one week to six weeks.

 Julia A. Almont, a GFSPA member and youth advisor and mentor for the teenage staff, emphasized that the organization spends a year planning for these girls weeks and that the underlying purpose of the organization is to increase personal strength and spirituality and to provide opportunities for young female teens within a safe, structured and supervised setting.

 Llyn Carter, National Girls' Friendly Society President, testified at trial that the Holiday House is used as a location for discussing and planning implementation of the four basic platforms of the organization: worship, bible study, outreach and fellowship, and recreation.

 The seasonal occupancy rate for 2010 was 45% and for 2011 was 33%.

 Nancy Myshko, a GFSPA member since age four who currently sits on the advisory board, testified that the cost of running the house annually is $ 110,000 and that there has never been a profit.

 GFSPA contends that the rates charged to users of the property are donations, not rental income.

 The procedural history indicates that GFSPA received a letter from the Municipality stating that the exemption was granted effective June 2011 and that the Cape May County Board of Taxation approved GFSPA's exemption in January 2011. Thereafter on March 7, 2011, GFSPA received an assessment revision from the Tax Board changing the assessment from exempt to taxable. Initially, GFSPA and the Municipal Tax Assessor thought that there was an error in the paperwork and that the correspondence from the County Tax Administrator was inaccurate. GFSPA alleges that the Tax Board acted improperly by not giving it notice of the hearings and by not providing reasons for the denial of the exemption. For these reasons, the County Tax Board was originally brought in as a defendant; however GFSPA voluntarily dismissed the Cape May County Board of Taxation as a defendant on March 19, 2012.

 A proclamation given to Holiday House in 2010 by the Mayor of Cape May City in honor of its 100th anniversary states that the house offers girls from nine to fourteen years old a summer vacation at the shore. It also proclaims that the Holiday House has become deeply intertwined with the values and character of the City of Cape May and that it participates as a major contributor in the City's historical, arts, culture and recreational heritage. None of these stated activities in the Mayor's proclamation are related to the stated purpose of the Girls Friendly Society.

 Art. VIII, Section 1, par. 2 of the Constitution provides, "Exemption from taxation may be granted only by general laws. Until otherwise provided by law all exemptions from taxation validly granted and now in existence shall be continued. Exemptions from taxation may be altered or repealed, except those exempting real and personal property used exclusively for religious, educational, charitable, or cemetery purposes, as defined by law, and owned by any corporation or association organized and conducted exclusively for one or more of such purposes and not operating for profit."

 Holiday House sits upon two plots of land totaling 10,806 square feet.

 This second requirement of the three-prong test reflects the Legislature's 2001 amendment to N.J.S.A. 54:4-3.6, which eliminated the requirement of exclusive use by the exempt entity. For discussion of the property exemption three-part test see Hunterdon Med. Ctr. v. Township of Readington, 22 N.J.Tax 302 (Tax 2005), aff'd, 391 N.J.Super. 434, 918 A.2d 675 (App.Div.2007), aff'd in part, rev’d in part, 195 N.J. 549, 951 A.2d 931 (2008) and Paper Mill Playhouse v. Millburn Township, 95 N.J. 503, 472 A.2d 517 (1984).

 The property is distinguished from most others because the house has a chapel and organ within it, allows for thirty guests and has a dining room large enough to permit all occupants to interact together as one group.

 Ultimately, however, the Court found the Press was ineligible for an exemption because it undertook certain printing to make a profit. Princeton Univ. Press, supra, 35 N.J. at 216-217, 172 A.2d 420.

 Trial testimony included statements indicating that the teenage girls working at Holiday House were not given all of their money in the summer; a small amount was retained and distributed in November so that the value of saving a part of one's earning would be encouraged.

 See Paterson Rescue Mission v. High, wherein the former Supreme Court held that the property of an organization that operated a home for the elderly, disabled men and for crippled and mentally deficient persons was exempt despite the fact that revenue from the sale of kindling was the home’s principle source of support. 64 N.J.L. 116, 117-119, 123, 44 A. 974 (Sup.Ct.1899). The home purchased wood, and the residents, to the extent they were physically able, chopped the wood into kindling and sold it in the city. Id. at 118-19, 44 A. 974. The court rejected the city’s argument that the property should not be exempt because the home was supported in large part by the profits derived from the efforts of the beneficiaries, stating, "[wjhere the objects and purposes of the institutions are wholly charitable, with no element of private gain, receipt of compensation from those who enjoy the benefits does not affect its charitable nature.” Id. at 120, 44 A. 974.

 The Boys' Club of Clifton was organized “under Title 15 to promote the health, social, educational, vocational and character development of boys.” Boys' Club of Clifton, supra, 72 N.J. at 396, 371 A.2d 22. The property included 100 acres of land, including a lake, and the Boys’ Club constructed approximately 28 buildings on it including a mess hall, infirmary, recreation hall, bathhouse, eleven boys’ cabins and four cabins for the staff. Ibid. For eight weeks during the summer the camp was in full operation. Ibid. A private for-profit ski program in the area rented some of the cabins for living quarters for the staff during a time when the Boys' Club were not using the facilities. Id. at 397, 371 A.2d 22. On one particular occasion 25 children who had been skiing used the cabins for temporary overnight housing. Ibid. Boys Club was paid $5,000 by the ski program for the use of their cottages that winter. Ibid. College students were also allowed to use the area for ecology and nature studies, so long as they paid $12 per person per weekend to reimburse Boys’ Club for its costs. Ibid. Additionally, church groups were allowed to occupy the facilities. In the three years leading up to the litigation, the Boys’ Club consistently had expenditures from the camp exceed income. Ibid.